2021 IL App (1st) 172314
No. 1-17-2314
Order filed February 8, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 01 CR 18452 (01) |
| TYRONE BREWER, JR., | ) ) | The Honorable |
| Defendant-Appellant. | ) ) ) | Kenneth J. Wadas, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Walker concurred in the judgment.
Justice Pierce dissented.

**ORDER**

¶ 1    *Held*: Defendant's *pro se* petition for leave to file a successive postconviction petition established a *prima facie* case of cause by showing that the law as well as neurological science that serves as the basis for his claim were unavailable until after his sentencing and his previous postconviction petition; defendant established prejudice because the law and the science demonstrate his 80-year sentence may be unconstitutional under the proportionate penalties clause.

¶ 2    Tyrone Brewer appeals from the circuit court's denial of leave to file a successive post-conviction petition. A jury convicted Brewer of first degree murder and personally discharging

a firearm that proximately caused the victim's death. The trial court sentenced Brewer to 50 years' imprisonment for first degree murder and an additional consecutive 30 years' imprisonment for personally discharging a firearm. Brewer was barely 18 years old at the time of the offense.

¶ 3    After this court affirmed Brewer's conviction on direct appeal and the denial of his post-conviction petition stood, Brewer sought leave of the trial court to file a successive post-conviction petition. In his *pro se* petition, Brewer asserted both cause for failure to raise a constitutional claim and prejudice because (i) his 18-year-old brain was like a juvenile brain; (ii) the trial court did not properly consider his youth at the sentencing hearing; and (iii) he received a *de facto* life sentence.

¶ 4    We reverse and remand for further postconviction proceedings so Brewer can develop his claim. Brewer made a *prima facie* case of cause by showing that the law and the neurological science that serves as the basis for his claim were unavailable until after his sentencing and his previous postconviction petition. Also, Brewer established prejudice because the law and the science demonstrate his 80-year sentence may be unconstitutional under the proportionate penalties clause.

¶ 5                                    Background

¶ 6    We set out the pertinent facts developed at trial in *People v. Brewer*, 2013 IL App (1st) 072821, and need not repeat them. At the sentencing hearing, two victim impact statements from the victim's mother and father were presented. A presentence investigation report indicated Brewer had a supportive family, happy childhood, and was "very close" to his mother and sisters. Brewer had no health or psychological issues, although he had been

diagnosed with depression after being beaten by police officers in March 2001. Brewer's mother and cousin spoke on his behalf in mitigation. Brewer declined to address the court.

¶ 7        The trial court found none of the statutory factors in mitigation applied except perhaps "the attitudes of the defendant" could indicate he was unlikely to commit another crime. In aggravation, the court found (i) Brewer's conduct inflicted serious harm; (ii) he had a history of criminal activity, although minimal; and (iii) the sentence was necessary to deter others from committing the same crime. The trial court sentenced Brewer to 50 years' imprisonment for first degree murder (30 years over the minimum) and an additional consecutive 30 years' imprisonment (5 years over the minimum) for personally discharging a firearm.

¶ 8        On direct appeal, we reversed Brewer's conviction and remanded. *People v. Brewer*, No. 1-07-2821 (2010) (unpublished order under Supreme Court Rule 23). The State sought leave to appeal to the Illinois Supreme Court. The supreme court denied the petition and remanded for us to reconsider in light of *People v. Thompson,* 238 Ill. 2d 598 (2010). On remand, this court affirmed the trial court's judgment. *People v. Brewer*, 2013 IL App (1st) 072821.

¶ 9        On April 4, 2014, Brewer filed his first *pro se* petition for post-conviction relief. On June 20, 2014, the trial court summarily dismissed the petition as frivolous and patently without merit. Appointed appellate counsel moved to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987). After reviewing the motion and memorandum, we affirmed the summary dismissal. *People v. Brewer*, 2016 IL App (1st) 142326-U.

¶ 10        On March 22, 2017, Brewer sought leave to file a successive post-conviction petition, which is the subject of this appeal. As support, Brewer invoked the protections accorded to juveniles in *Miller v. Alabama*, 567, U.S. 460 (2012). Citing *People v. House*, 2015 IL App (1st) 110580 (*House* I) and *People v. Nieto*, 2016 Il App (1st) 121604, Brewer also argued that

the judge failed to consider "social science factors" and his "age-related characteristics" at sentencing.

¶ 11    On March 23, 2020, the Illinois Supreme Court vacated the judgment in *Nieto*, and directed the appellate court "to consider the effect of this Court's opinions in *People v. Buffer*, 2019 IL 122327, and *People v. Holman*, 2017 IL 120655, on the issue of whether defendant's sentence constituted a *de facto* life sentence in violation of the Eighth Amendment and *Miller v. Alabama*, 567 U.S. 460 (2012), and determine if a different result is warranted." On June 30,2020, this court reached the same result, vacating the sentence of 78 years' imprisonment and remanding for resentencing. See *People v. Nieto*, 2016 IL App (1st) 121604-B, ¶ 2, ¶ 61.

¶ 12    The trial court denied leave to file the successive postconviction petition, finding that neither *Miller*, *Nieto*, nor *House* applied to Brewer, who was over 18 at the time of the murder. The trial court also noted that, unlike the defendant in *House*, Brewer had received a discretionary sentence after the trial court considered all mitigation. Brewer now appeals from denial of leave to file his petition.

¶ 13    We reverse. At this stage, Brewer is not, as the State contends, required to conclusively prove that his claim has merit or that his sentence was unconstitutional. At this stage, he has to allege "enough facts to warrant further proceedings on his claim that the tenets of *Miller* apply to him." *Bland*, 2020 IL App (3d) 170705, ¶14. And Brewer has satisfied that threshold.

¶ 14                                    Analysis

¶ 15                              *Standard of Review*

¶ 16    Our review of the trial court's decision to deny leave to file a successive postconviction petition is *de novo*, accepting all well-pled facts and affidavits as true. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25.

¶ 17                    *Successive Postconviction Petition*

¶ 18          The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) allows a petitioner to raise claims that his or her constitutional rights were violated in the original trial or sentencing proceedings. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). The Act allows the filing of only one postconviction petition. *Id.* at 456. Any claim not raised in the initial petition is waived (*id.* at 459; see also 725 ILCS 5/122-3 (West 2018)), except where a defendant (i) shows cause for, and prejudice from, failing to raise the claim in the initial petition or (ii) makes a colorable claim of actual innocence. *Pitsonbarger*, 205 Ill. 2d at 459-60. A petitioner must obtain leave of court as well as submit enough in the way of documentation to allow the trial court to determine if the petition adequately alleges facts to make a *prima facie* showing of cause and prejudice. *People v. Bailey*, 2017 IL 121450, ¶ 24.

¶ 19          The trial court denied Brewer's motion. Brewer now contends that he should have the opportunity to develop a record in his post-conviction proceedings to make his as-applied challenge. Such a challenge "requires a showing that the statute is unconstitutional as it applies to the challenging party's specific circumstances." *People v. Harris*, 2018 IL 121932, ¶ 52. Brewer argues that imposition of a "*de facto*" life term for an 18-year-old violated the Eighth Amendment of the United States Constitution and the Proportionate Penalties Clause of the Illinois Constitution. U.S. Const., amend. VIII; Ill. Const. 1970, § 11. Brewer claims his *pro se* successive postconviction petition established both cause and prejudice.

¶ 20          The State counters that Brewer did not make the requisite showing of cause and prejudice, citing *People v. Edwards*, 2012 IL 111711, ¶ 24. Although the petitioner in *Edwards* did not advance a cause and prejudice claim, the supreme court held that under either exception, the petitioner must obtain leave of court and "submit enough in the way of documentation to allow

a circuit court to make that determination." (Internal quotations omitted.) *Id.* (quoting *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010).

¶ 21                              *Cause for Failure to Raise Constitutional Claim*

¶ 22        "A defendant may establish cause "by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2018).

¶ 23        In 2014, Brewer filed his first postconviction petition. It raised several claims: (i) ineffectiveness of trial counsel in two instances; (ii) ineffectiveness of appellate counsel; (iii) trial court error; and (iv) the Illinois Supreme Court's supervisory order resulted in an *ex post facto* violation. But at that time, Brewer could not have raised a specific claim based on *Miller* and its progeny.

¶ 24        *Miller* had already established that life without parole for juvenile offenders violated the eighth amendment's prohibition against cruel and unusual punishment, except where the crime reflects irreparable corruption. But Illinois courts did not extend the reach of *Miller* to adult defendants until recently. For example, in *People v. Minniefield*, the defendant claimed he had established the cause and prejudice needed to file a successive postconviction petition. *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 31. His petition raised a single claim nearly identical to Brewer's. In *Minniefield*, the defendant asked whether "in light of recent law and developing science, his sentence of 50 years without the possibility of parole was unconstitutional as applied to him, where he was only 19 years old at the time of the offense, with no violent criminal history or gang affiliation and with a stable family and work history." *Id.*

¶ 25    A similar claim was made in *People v. Carrasquillo*, 2020 IL App (1st) 180534, where the defendant was convicted of first-degree murder of a Chicago police officer committed just five months after he turned 18. He received a sentence of an indeterminate term of 20 years to life. In 2018, Carrasquillo raised an as-applied challenge to his *de facto* life sentence and sought leave to file the successive postconviction petition based on *Harris*, 2018 IL 121932. This court found Carrasquillo satisfied the cause and prejudice test, one that he could not have raised in his first petition since *Miller* had not yet been decided.

¶ 26    As in *Minniefield* and *Carrasquillo*, we find Brewer established cause in that when he filed his initial post-conviction petition in 2014, he could not have anticipated the line of cases expanding the holding of *Miller*.

¶ 27                    *Prejudice from Failure to Raise a Constitutional Claim*

¶ 28    Brewer also argues that he established "prejudice" by making a *prima facie* as-applied *Miller* challenge by alleging: (1) his 18-year-old brain was like a juvenile brain; (2) he received a *de facto* life sentence; and (3) his youth was not properly considered at his sentencing hearing. Both *Harris*, 2018 IL 121932, ¶¶ 45-46, and *People v. Thompson*, 2015 IL 118151, ¶¶ 38, 44, recognized that 18- or 19-year old offenders can present scientific evidence that their brains were like juvenile brains through the post-conviction process, to establish that *Miller*'s juvenile sentencing protections apply.

¶ 29    Both *Harris* and *Carrasquillo* recognize that a trial court's ruling without a developed record is "premature." *Harris*, 2018 IL 121932, ¶ 46; *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109. As stated in *Carrasquillo*, a defendant may show prejudice by establishing a " 'catch-22'—without a developed record, he cannot show his constitutional claim has merit, and without a meritful claim, he cannot proceed to develop a record." *Carrasquillo*, 2020 IL App

(1st) 180534, ¶ 109. This court found in *People v. Johnson*, 2020 IL App (1st) 171362, and *People v. Ruiz*, 2020 IL App (1st) 163145 that the petitioners made *prima facie* showings in their pleadings that evolving understandings of the brain psychology of adolescents required *Miller* to apply to them.

¶ 30 Most recently, *Minniefield* recognized the eighth amendment's prohibition of cruel and unusual punishment that " 'guarantees individuals the right not to be subjected to excessive sanctions.' " *Minniefield,* 2020 IL App (1st) 170541, ¶ 34. (quoting *Miller*, 567 U.S. at 469 (quoting *Roper*, 543 U.S. at 560)). This right flows from the basic premise that punishment for a crime should be proportioned to both the offender and the crime. *Id.*

¶ 31 The proportionate penalties clause, "which focuses on the objective of rehabilitation," places greater limitations on the legislature's ability to prescribe harsh sentences than the eighth amendment of the United States Constitution. *People v. Clemons,* 2012 IL 107821, ¶ 40. The requirement that all sentences be determined "with the objective of restoring the offender to useful citizenship," was added to the 1970 Illinois Constitution as "a limitation on penalties beyond those afforded by the eighth amendment." (Internal quotation marks omitted.) *Id.* ¶ 39.

¶ 32 Emerging research indicates that the development of the young brain continues well beyond the age of 18, the arbitrary age for those arrested and entering our criminal law system to be treated as "adults." This court in *People v. Brown*, 2015 IL App (1st) 130048, ¶ 45, reviewed the sentence for a defendant who was 16-year-old at the time of the offense but tried as an adult. The court concluded the sentence, which could not be completed until the defendant attained age 66, was excessive and did not satisfy the constitutional objective of restoring defendant to useful citizenship. *Id.* The *Brown* court noted "[n]euroscience research

suggests that the human brain's ability to govern risk and reward is not fully developed until the age of 25." *Id*. ¶ 46.

¶ 33    Even the most heinous offenses do not cancel constitutional protections to a young person who commits them. *Miller*, 567 U.S. at 465-68. In *Miller*, one defendant participated in the attempted robbery of a video store, during which the clerk was shot point blank with a sawed-off shotgun. The other defendant robbed a neighbor of $300 and repeatedly hit the victim with a baseball bat before setting fire to the victim's trailer with the victim alive inside. (Internal quotation marks omitted.) *Miller*, 567 U.S. at 465-68.

¶ 34    The State argues that *Miller v. Alabama*, *Harris*, 2018 IL 121932, and *Thompson,* 2015 IL 118151, are inapplicable because they addressed mandatory life or mandatory *de facto* life terms and not discretionary sentences. We reject this argument and find support in *Minniefield* which states "[t]he Illinois Supreme Court found that the reasoning of '*Miller* applies to discretionary sentences' as well." *Minniefield*, 2020 IL App (1st) 170541, ¶ 36 (quoting *People v. Holman*, 2017 IL 120655, ¶ 40). The key issue is not whether the sentence was mandatory or discretionary but whether the proper process was followed by having a sentencing hearing that considers the defendant's youth and characteristics. *Holman*, 2017 IL 120655, ¶¶ 37-38. In other words, the relevant inquiry is whether the trial court failed to specifically consider "some variant of the *Miller* factors." *Holman*, 2017 IL 120655, ¶¶ 40, 43-44.

¶ 35    Moreover, after *Holman*, our supreme court in *People v. Buffer* explicitly found that *Miller* applies to juvenile life sentences, whether "mandatory or discretionary." *Buffer*, 2019 IL 122327, ¶ 27, 43. The *Buffer* court found that, for a juvenile, a *de facto* life sentence was a sentence of 40 years or more. *Buffer*, 2019 IL 122327, ¶¶ 40-41; *Carrasquillo*, 2020 IL App

(1st) 180534, ¶¶ 40-41. Brewer was only a few months past his 18th birthday at the time of the offense.

¶ 36      In *Nieto*, the defendant was 17 years old at the time of the offense. *Nieto*, 2016 IL App (1st) 121604-B, ¶ 14. This court's evaluation of the trial court's sentence stated: "While we do not fault the trial court for failing to apply principles of law and science that had not yet been adopted by the Supreme Court, the trial court's findings do not imply that it believed defendant was the *rarest* of juveniles whose crime showed that he was permanently incorrigible." (Emphasis in original.) *Id.* ¶ 58. Even though the trial court found that given the defendant's gang involvement and history, the defendant was likely to commit a crime in the foreseeable future, this court observed "susceptibility to peer pressure and recklessness erode with age." *Id.* Indeed, this court noted, the trial court found defendant could do something positive in the future, possibly change his life "and even help other gang members change their ways, albeit in prison." *Id.* Given that Brewer was five months past his 18th birthday, these factors are equally applicable.

¶ 37      *Minniefield* points to "our evolving standard of decency" underlying both the proportionality clause and the eighth amendment and expressed in *People v. Miller*, 202 Ill. 2d 328, 339 (2002) ("as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community"). *Minniefield*, 2020 IL App (1st) 170541, ¶ 35. We cannot ignore the fact that Brewer's sentence results in incarceration until he reaches 98 years old. The law in Illinois has evolved to recognize the reality and failed utility of lengthy sentences for adolescents. Brewer may now develop his claim in a stage-two postconviction hearing.

¶ 38     Four recently published decisions, *Daniels*, *Bland*, *Franklin*, and *Savage*, addressed the argument that Brewer should be allowed leave to file his successive petition to develop the factual basis for his as-applied constitutional claim.

¶ 39     In August 2020, *People v. Daniels*, 2020 IL App (1st) 171738, reversed the trial court's order denying the defendant leave to file a successive post-conviction petition in which he claimed that his sentence was unconstitutional under *Miller*. *Id*. ¶ 36. Observing the law's continued trend "in the direction of increased protections for youthful offenders," this Court held that the defendant's reliance on *Harris*, 2016 IL App (1st) 141744 and *Thompson*, 2015 IL 118151—both decided after the defendant's prior post-conviction petitions—established cause. *Id*. ¶ 34.

¶ 40     In *Daniels*, the defendant pled guilty to a murder he committed when he was 18-years-old. This court observed that "there has been virtually no guidance as to what, exactly, an adult defendant must show to obtain relief under *Miller*'s auspices." *Id*. ¶ 31. Further, it found that neither *Harris* nor *House* "should utterly disqualify him or her from raising" an as-applied, youth-based proportionate penalties claim. *Id*. ¶ 31. The court acknowledged that Daniels "had an unusually harsh childhood and suffered from a number of psychological conditions that could have inhibited his development and caused him to act impulsively." *Id*. ¶ 33. Accordingly, this court concluded that it was premature at the leave to file stage of proceedings to determine whether his claim fails as a matter of law because he "may be able to make a showing that his mental health conditions are of a nature that he can and will outgrow them and that he was the functional equivalent of a juvenile because of those conditions." *Id*. ¶ 34.

¶ 41     Like the defendant in *Daniels*, Brewer was 18 years old when he committed a violent offense, and he was sentenced before *Miller* and its progeny. Similarly, he now seeks leave to

file a successive post-conviction petition alleging that youth played a role in his offense and asking for an opportunity to demonstrate that his young adult brain was more akin to that of a juvenile. As in *Daniels*, it is premature to affirm the trial court's order denying leave to file before Brewer can develop the record more fully.

¶ 42     Shortly after *Daniels*, the Third District issued *People v. Bland*, 2020 IL App (3d) 171705. Bland was convicted of a murder he committed when he was 19 years old and sentenced to a *de facto* life sentence of 71 years' imprisonment. *Id*. ¶ 6. He sought leave to file a successive post-conviction petition, arguing his *de facto* life sentence was unconstitutional under the eighth amendment and the proportionate penalties clause. *Id*. ¶ 13. The reviewing court reversed the trial court's denial of the motion for leave to file, finding that the petition pled sufficient facts to warrant second-stage postconviction proceedings. *Id*. ¶ 14. Specifically, the court found Bland established a cause for filing his petition in 2017, where "the suggestion that Miller could be applied to those 18 years of age and older was not made until 2015 in *People v. Thompson*, 2015 IL 118151" and *Miller* was extended to *de facto* life sentences in *People v. Reyes*, 2016 IL 119271. *Id*. ¶ 10. The court also observed that *Harris* "suggested" that an as-applied challenge under *Miller* had not been foreclosed for emerging adults. *Id*. ¶ 13.

¶ 43     Referencing the juvenile studies cited in *House*, the 19-year-old Bland alleged that "he was found guilty under a theory of accountability, and he had been diagnosed with an antisocial personality disorder that exhibited symptoms similar to characteristics of juveniles." *Id*. ¶ 14. *Bland* held that the defendant had "pled enough facts to warrant further proceedings on his claim that the tenets of *Miller* apply to him," and in doing so, observed that nothing in the record "indicates that the trial court considered the defendant's youth and its attendant characteristics as recognized in *Miller*." *Id*. ¶ 14.

¶ 44    Like the defendant in *Bland*, the trial court did not consider his youth when it imposed a *de facto* life sentence. Also, like *Bland*, Brewer cited scientific studies and the decision in *House* to support his claim of unconstitutionality. Brewer also explained that his "personal characteristics are scientifically and constitutionally [inherent] to petitioner's youth at the time petition was charged[.]" Finally, Brewer asserted that "[g]iven the science relied on by the United States Supreme Court, the reasoning and underlying analysis in support of Miller apply with equal force here because petitioner falls into the class of youth that science recognizes as having brains that are not yet fully developed at the time of the offense." *Bland* supports Brewer's argument for reversal.

¶ 45    One week after *Bland* was decided, this Court issued *People v. Franklin*, 2020 IL App (1st) 171628, reversing the trial court's order denying the defendant leave to file a successive post-conviction petition where he met the "very low threshold requirement" for merely filing. *Id.* ¶ 3. Franklin's petition alleged that his natural life sentence for a murder he committed when he was 18-years-old violated the eighth amendment and proportionate penalties clause because it ignored his rehabilitative potential and did not take into account his mental illness. In remanding the case for further proceedings, this Court explained that the "proper vehicle for a young adult such as defendant, who is between 18 and 21 years old, to raise an as-applied challenge to a life sentence is in a postconviction proceeding." *Id.* ¶ 71. And when a defendant claims that the evolving science discussed in *Miller* applies to emerging adults, the trial court is the most appropriate tribunal for factual development. *Id.*

¶ 46    While acknowledging that the record before it contained no evidence about the evolving science and its impact on Franklin, this court found that he showed prejudice by establishing a "catch-22–without a developed record, he cannot show his constitutional claim has merit, and

without a meritful claim, he cannot proceed to develop a record." *Id*. ¶ 72. Looking at the record, the defendant had no prior adult or juvenile convictions, had to repeat the 9th grade, left school in the 10th grade, had low average/borderline intelligence, suffered from auditory hallucinations, had two head injuries, and had been diagnosed with various mental illnesses. *Id*. ¶ 34. The record showed that at sentencing, the trial court did not consider his age (except to determine that it qualified him for death-penalty consideration) or the attendant characteristics of his youth, and the record also failed to establish that he was beyond the possibility of rehabilitation. *Id*. ¶¶ 59, 66.

¶ 47    Recognizing that "mental health issues may lower a defendant's functional age" and should be considered in fashioning an appropriate sentence, the case was remanded for second-stage post-conviction proceedings "to allow the trial court to consider whether [the defendant's] mental health and other issues at the time of the offense rendered [him] functionally under 18 years old or whether, as applied to him, as someone under 21-years-old, his sentence of natural life without the possibility of parole violates the proportionate penalties clause of our state." *Id*. ¶¶ 64, 69.

¶ 48    As in *Franklin*, the record shows that Brewer received psychiatric treatment on multiple occasions. Additionally, at a pre-trial motion to suppress Brewer's statement, a board-certified psychiatrist testified that about six weeks before the offense, she evaluated Brewer and diagnosed him with having "post-traumatic stress disorder" following an alleged beating by the Chicago police. She prescribed Zoloft.

¶ 49    Also as in *Franklin*, the record shows that the trial court never considered Brewer's young age or the attendant characteristics of youth or found him beyond rehabilitation when it

imposed a *de facto* life sentence. The *Franklin* court declared it "paramount" that the record be developed in the trial court. *Id.* ¶ 71.

¶ 50    On the same day *Franklin* issued, this court decided *People v. Savage*, 2020 IL App (1st) 173135. The court in *Savage* reversed the summary dismissal of an initial post-conviction petition and remanded for stage-two postconviction proceedings. Savage was 22-years-old when he committed a murder and attempt murder during a botched robbery in 1992. *Id.* ¶ 15. He was convicted of both offenses and sentenced to consecutive prison terms of 60 years for the murder and 25 years for the attempt murder. *Id.* ¶ 35. In 2017, he filed an initial *pro se* post-conviction alleging that his sentence violated the eighth amendment and proportionate penalties clause as applied to him, because his youth and long-term drug addiction made him the functional equivalent of a juvenile, "more susceptible to peer pressure" and "more volatile in emotionally charged settings." *Id.* ¶ 71. Savage explained that he had since become sober and had not tested positive for drugs while in prison, despite their availability. *Id.* ¶ 9. The trial court summarily dismissed the petition as frivolous and patently without merit. *Id.* ¶ 38.

¶ 51    On appeal, this Court reversed and remanded for stage-two post-conviction proceedings, finding that "Illinois courts typically consider the sentencing claims of young adults under the proportionate penalties clause rather than the eighth amendment [,]" because federal cases have generally drawn a line at age 18 (*Minniefield*, 2020 IL App (1st) 170541, ¶ 37), and because "the Illinois clause offers a broader path to the same type of relief." *Id.* ¶ 61. Also, recent legislative enactments support defined "youthful offenders" as those under the age of 21. *Id.* ¶ 68. For example, House Majority Leader Currie argued during the debates on the bill allowing individuals under 21 years of age at the time of the offense to be eligible for parole after serving 20 years in prison, that those under 21 years old are " 'young people' " who " 'do not always

have good judgment.' " (quoting 100th Ill. Gen.Assem., House Proceedings, Nov. 28, 2018, at 48-49) *Id.* Additionally, this Court commented that those under 21 years of age are treated differently than adults under the law, as they cannot purchase alcohol, cigarettes, and wagering tickets, cannot own a gun without parental permission, and cannot be sentenced to a Class X sentence due to recidivism. *Id.* ¶ 69. And mental health issues may lower a defendant's "functional age" as the "law requires a sentencing court to consider whether, at the time of offense, the defendant was suffering from a mental disability that substantially affected his ability to conform his conduct to the requirements of the law." *Id.* ¶ 70.

¶ 52    As in *Savage*, the record here "does not show that the trial court considered the attributes of young adulthood[.]" *Id.* 74. Again, as in *Savage*, the record supports Brewer's claim, which shows he was under psychiatric care at the time the offense was committed, and the trial court did not mention Brewer's age and did not consider the characteristics of youth, or his rehabilitation potential when it imposed a de facto life sentence.

¶ 53    While the State complains that Brewer has not adequately plead his claim when he moved for leave to file, the most recent caselaw indicates that all he needs to plead is his age, a mandatory life sentence, a lack of criminal background, and anything in the record indicating rehabilitative potential. Moreover, if Brewer demonstrated that the evolving science regarding juvenile brain development does apply to him, he would be entitled to a new sentencing hearing, not merely advancement to the second stage. See *Franklin*, 2020 IL App (1st) 171628, ¶ 69 (reversing denial of leave to file defendant's pro se successive petition and remanding for further proceedings so trial court can "consider whether" "as applied to him, as someone under 21 years old, his sentence of natural life without the possibility of parole violates the proportionate penalties clause of our state.").

¶ 54     At this stage, Brewer has alleged "enough facts to warrant further proceedings on his claim that the tenets of *Miller* apply to him." *Bland*, 2020 IL App (3d) 170705, ¶14.

¶ 55     We reverse the trial court's denial of Brewer's request for leave to file his successive postconviction petition and remand. If Brewer succeeds, the trial court will consider a new sentencing hearing.

¶ 56     Reversed and remanded.

¶ 57     JUSTICE PIERCE, dissenting.

¶ 58     Brewer argued that the court erred when it denied him leave to file his successive postconviction petition because he established "prejudice" by making a *prima facie* as-applied *Miller* challenge by alleging: (1) his 18-year-old brain was like a juvenile brain; (2) he received a *de facto* life sentence; and (3) his youth was not properly considered at his sentencing hearing. The majority agrees with Brewer and has given him the opportunity to develop his claims in a successive postconviction petition. I write to express my disagreement with the majority's finding that Brewer's case should be remanded to the circuit court to allow him an opportunity to develop his *Miller* claims, and, if established, allow the trial court the opportunity to judge the credibility of those claims.

¶ 59     Brewer was 18 years old at the time he committed first degree murder, yet he seeks the protection of *Miller,* protections that do not apply to adult offenders. He wants to receive the same protections afforded juveniles even though he was an adult at the time of his offense. *Miller* related jurisprudence concerns the mandatory or discretionary natural or *de facto* life sentence imposed on a juvenile. *People v. Buffer*, 2019 IL 122327, ¶ 27. Brewer was not a juvenile at the time of the offense, he was 5 months past his 18th birthday, and therefore *Miller* does not apply here.

¶ 60      However, even if *Miller* applies, Brewer should not be given leave to file a successive postconviction petition because he simply cannot establish the necessary prejudice where the record before us shows that his sentencing hearing considered the *Miller* factors. Consistent with the directives of *Holman*, 2017 IL 120665 and applying the analysis we used in *People v. Croft*, 2018 IL App (1st) 150043, *appeal denied*, 98 N.E. 2d 28 (2018), *cert denied* 139 S. Ct. 291 (2018), a review of the sentencing record shows there was no constitutional violation in the imposition of Brewer's sentence. I would find no constitutional error warranting leave to file a successive postconviction petition. See *People v. Harris*, 2018 IL 121932 (the record was insufficient to rule on defendant's *Miller* claims because there was no record of any hearing or findings of fact).

¶ 61      Brewer had an extensive and detailed sentencing hearing where the trial court considered the nature of the offense, defendant's social and criminal background and, importantly, his young age. As we stated in *Croft*, "a key feature of the juvenile's sentencing hearing is that the defendant had the 'opportunity to present evidence to show that his criminal conduct was the product of immaturity and not incorrigibility.' " (Emphasis added). *Croft*, 2018 IL App (1st) 150043, ¶ 23 (quoting *Holman*, 2017 IL 120655, ¶ 49). *Croft* noted that the *Holman* factors are "a nonexhaustive list" and that "nothing in *Miller* or *Holman* suggests that we are free to substitute our judgment for that of the sentencing court" because the issue is not the particular sentence the trial court imposed but whether defendant had the opportunity to present evidence regarding his youth and that the court considered his youth and its attendant characteristics in reaching its sentencing decision. *Croft*, 2018 IL App (1st) 150043, ¶ 32-33.

¶ 62      Accepting Brewer's contention, which I do not agree with, that *Miller* applies to an 18-year-old adult (see *Edwards*, 2012 IL App (1st) 091651, ¶ 25) (at this stage we must accept

Brewer's allegations as true), the majority simply fails to recognize that Brewer had a *Miller* compliant sentencing hearing. At the sentencing hearing for this 18-year-old adult, defendant had the opportunity present any and all evidence he believed mitigated his offense. Defense counsel zealously represented defendant in this respect. As in *Croft*, the trial court in this case had before it the trial testimony, the evidence, Brewer's PSI, and the sentencing arguments of the parties before it sentenced Brewer. As a result, the trial court considered the same factors the *Holman* court found to be constitutionally consistent with *Miller*. Specifically, the circuit court stated:

> "Factors in mitigation, the defendant's criminal conduct neither caused nor threatened serious physical harm to another, not applicable. The defendant did not contemplate that his original or his criminal conduct would cause or threaten serious physical harm to another, completely not applicable. Any time you take a weapon and attempt to basically carjack someone with—out of their property and get involved in an armed robbery with multiple other offenders and a gun goes off a few times and somebody gets killed, that absolutely, this factor in mitigation does not apply. The defendant acted under a strong provocation, not applicable. Number four, there were substantial grounds tending to excuse or justify the defendant's criminal conduct though failing to establish a defense, not applicable. Defendant's criminal conduct was induced or facilitated by someone other than the defendant, not applicable other than the fact that three people acted in concert to commit the crime. Number six, compensation to the victim, of course not applicable. Seven, the defendant has no prior history of delinquency or criminal activity, not applicable. Although it's minimal, I think there's some juvenile background for narcotics and an adult conviction for narcotics, probations on those, but not significant

-19-

prior criminal history. The defendant's criminal conduct was a result of circumstances unlikely to recur. I'm not exactly sure about that. The witnesses for the defense indicated that his conduct—his character which is more like the next factor in mitigation and attitudes 'that he—attitudes of the defendant indicate that he is unlikely to commit another crime. The family members are mystified that the defendant could have even committed this offense based on his prior character. So but the fact of the matter is that when the relatives closest to the defendant are always shocked when they find out something about their son or nephew that they couldn't believe would exist—would have existed that he would have gotten himself involved in a situation like this. But that's exactly what happened here according to this jury verdict wherein they found that the defendant was not only guilty of first degree murder but in fact was the shooter in the case and fired a handgun which caused death. The imprisonment of the defendant would entail excessive hardship to his dependents, not any more so than any other situation. 12, defendant's medical condition, not applicable. 13, mental retardation, not applicable. Factors in aggravation, the defendant's conduct did cause or threaten serious harm, the ultimate serious harm, murder. The defendant received compensation for committing the offense, no, but this was a robbery that turned into a murder, felony murder. The defendant has a history of prior delinquency or criminal activity. Although minimal, yes, he does have a history of prior delinquency, not a stranger to the criminal justice system. Four is not applicable. Five is not applicable. Six is not applicable. Seven is absolutely applicable. The sentence is necessary to deter others from committing the same crime. Eight and nine are not applicable. And I believe the other factors in aggravation that I've looked through, 10, 11, 12, 13, 14, 15, on through 20 and 21 are not applicable."

¶ 63    Consequently, in my view, because we have a sufficient record before us, the analysis employed in *Croft* is the analysis that the majority should apply, but totally ignores, to find that defendant was correctly sentenced. Brewer clearly had the opportunity to present any existing youth related mitigation to the trial court during his sentencing hearing. ("We have examined the cold record of the circuit court's [sentencing] hearing * * *, which includes the common law record and report of proceedings, and find that the circuit court considered evidence of the defendant's youth and its attendant characteristics at the time of sentencing and that the defendant had" the opportunity required by *Holman*. *Id.* ¶ 24.)

¶ 64    There is simply no basis to allow Brewer, an adult, leave to file a successive postconviction petition to argue that *Miller* applies to him so he can get a second bite at the sentencing apple where the sentencing court considered all the relevant *Miller* factors addressed during the sentencing hearing even though he was he was an adult. Because a reviewing court can determine from the cold record that no constitutional error occurred (*Holman*), as we can in this case, then it follows that Brewer cannot establish the necessary prejudice to be granted leave to file a successive postconviction petition.

¶ 65    For these reasons, I respectfully dissent.