2025 IL App (1st) 240088
No. 1-24-0088
Opinion filed October 17, 2025

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 18452 |
| | ) | |
| TYRONE BREWER, | ) | The Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pucinski and Gamrath concurred in the judgment and opinion.

**OPINION**

¶ 1    The Illinois Constitution empowers our courts to evaluate the severity of a statutorily

mandated criminal sentence in light of the evolving standard of decency in our community. Yet,

some cases become entangled in procedural complexities that prevent courts from addressing the

core of the claims.

¶ 2    Tyrone Brewer seeks to clarify his case by arguing that his petition (i) demonstrates cause

and prejudice, which allows him to pursue his as-applied sentencing claim in a successive

postconviction petition, and (ii) made a substantial showing of a constitutional violation that

warrants further litigation at an evidentiary hearing. Alternatively, he contends that his counsel provided inadequate assistance by failing to sufficiently defend his claim against the State's motion to dismiss.

¶ 3    We acknowledge the shifting rules and procedures that Brewer has navigated for the past eight years, including our previous decision regarding his case. The supreme court has repeatedly allowed emerging adults to litigate sentencing claims similar to Brewer's in postconviction proceedings. But, the procedural form must align with the legal substance when addressing novel constitutional claims. And petitioners like Brewer have had to repeatedly start and stop their litigation efforts as the supreme court has continued to consider substantive aspects of claims under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Caselaw from our supreme court compels us to stop Brewer once more and conclude that he has not established cause as a matter of law.

¶ 4    As of yet, the neuroscience supporting Brewer's claim remains unresolved. And Illinois courts treat the sentencing claims of emerging adults inconsistently, when raised at a sentencing hearing or in successive postconviction proceedings, even if fundamental fairness should take precedence over procedural formalities.

¶ 5    For the time being, we find that Brewer cannot raise his alternative argument about factual cause for the first time in this appeal. Having determined that he failed to establish cause, we do not address Brewer's claim that he made a substantial showing of an as-applied constitutional violation. Finally, we conclude that remand counsel performed as well as could reasonably be expected, although we note that the supreme court has the supervisory authority to order the circuit court to reconsider Brewer's contention. We affirm.

¶ 6                                    Background

¶ 7      The pertinent facts from the trial are set out in *People v. Brewer*, 2013 IL App (1st) 072821 (*Brewer I*). Instead, we focus on the sentencing hearing and subsequent litigation, including relevant decisions from the Illinois Supreme Court.

¶ 8      The trial court sentenced Brewer to a mandatory *de facto* life sentence of 80 years in prison. This sentence comprised 50 years for first degree murder (30 years over the minimum) and 30 years for personally discharging a firearm to cause death (5 years over the minimum). At the time of the offense, Brewer was about 18 years and 5 months old.

¶ 9      A presentence investigation report indicated that Brewer had a supportive family, a happy childhood, and was "very close" to his mother and sisters. He had no health or psychological issues, though he had been diagnosed with depression following an incident in which police beat him just weeks before this offense. Brewer's mother and cousin spoke on his behalf in mitigation. The trial court also received two victim impact statements from the victim's mother and father. Brewer declined to address the court.

¶ 10     Before imposing the sentence, the trial court found that none of the statutory factors in mitigation applied, except possibly "the attitudes of the defendant," suggesting he was unlikely to commit another crime. In aggravation, the court found (i) Brewer's conduct inflicted serious harm, (ii) he had a minimal history of criminal activity, and (iii) a lengthy sentence was necessary to deter others from committing similar crimes.

¶ 11     On direct appeal, we reversed Brewer's conviction and remanded for a new trial. *People v. Brewer*, No. 1-07-2821 (2010) (unpublished order under Illinois Supreme Court Rule 23). The State sought leave to appeal to the Illinois Supreme Court, which denied the petition and

remanded the case for reconsideration, applying its decision in *People v. Thompson*, 238 Ill. 2d 598 (2010). We did and affirmed the conviction. *Brewer I*, 2013 IL App (1st) 072821.

¶ 12    About a year later, the trial court summarily dismissed Brewer's first *pro se* petition for postconviction relief. Appointed counsel moved to withdraw on appeal, and after reviewing the motion and memorandum, we affirmed. *People v. Brewer*, No. 1-14-2326 (2016) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 13    On March 22, 2017, Brewer sought leave to file a successive postconviction petition, which is the subject of this appeal. In support, Brewer referenced the protections established for juveniles in *Miller v. Alabama*, 567 U.S. 460 (2012). Citing the then-recent caselaw from the appellate court, *People v. Nieto*, 2016 IL App (1st) 121604, and *People v. House*, 2015 IL App (1st) 110580, Brewer argued that the judge failed to consider "social science factors" and his "age-related characteristics" at sentencing. When the circuit court denied his request to file, *Nieto* and *House* had not reached finality, and the circuit court concluded that neither they nor *Miller* applied to his case.

¶ 14    We reversed and remanded, holding that Brewer had presented sufficient facts to warrant further proceedings regarding his claim that the principles of *Miller* apply to him as an emerging adult. *People v. Brewer*, 2021 IL App (1st) 172314-U, ¶¶ 54-56 (*Brewer II*). Nearly four years after the circuit court's ruling, we noted that "the most recent caselaw indicates that all [Brewer] needs to plead is his age, a mandatory life sentence, a lack of criminal background, and anything in the record indicating rehabilitative potential." *Id.* ¶ 53.

¶ 15    As the parties litigated Brewer's claim on remand, the caselaw continued to develop. For example, about five months later, the Illinois Supreme Court held that "*Miller*'s announcement of

a new substantive rule under the eighth amendment does not provide cause for a [juvenile] defendant to raise a claim under the proportionate penalties clause." *People v. Dorsey*, 2021 IL 123010, ¶ 74.

¶ 16    In July 2022, Brewer's counsel filed a supplemental petition citing *Brewer II*. Counsel argued that emerging research suggests the development of the young brain continues well beyond age 18, so Brewer should be allowed to show that his sentence was unconstitutional as applied to him. The petition included a character letter from an associate professor who had met Brewer at Statesville Correctional Center, as well as 89 certificates Brewer had received from prison programming. Counsel also attached a certificate stating that he had consulted with Brewer and the alleged facts were "true and correct and represent[ed] the entirety of [Brewer's] claim."

¶ 17    After counsel filed the supplemental petition, the Illinois Supreme Court held that "[a]s *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause." *People v. Moore*, 2023 IL 126461, ¶ 40.

¶ 18    The State moved to dismiss Brewer's petition, citing the supreme court's recent decisions. In response, appointed counsel argued that some of those cases were distinguishable and that the circuit court should focus on *Brewer II*. The circuit court granted the State's motion and dismissed Brewer's petition.

¶ 19                              Analysis

¶ 20    Brewer contends that his petition (i) established cause and prejudice, thus allowing him to litigate his sentencing claim in a successive postconviction petition and (ii) made a substantial showing of a constitutional violation, thus requiring further litigation at an evidentiary hearing. He

argues, alternatively, that counsel provided unreasonable assistance by failing to adequately defend his claim against the State's motion to dismiss.

¶ 21                                                    *Cause*

¶ 22    The Post-Conviction Hearing Act (Act) contemplates the filing of one petition by right and successive petitions with leave of court. 725 ILCS 5/122-1(f) (West 2022). This process for successive litigation enhances the postconviction system, ensuring that procedural rules do not undermine fundamental fairness. *People v. Blalock*, 2022 IL 126682, ¶ 38. Petitioners initiate successive petitions by invoking the "cause and prejudice" exception, a legal concept codified under the Act. *Id.*

¶ 23    A petitioner can establish "cause" by identifying an objective factor that prevented them from raising a specific claim during the initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2022). The supreme court has observed " ' "that a showing that the factual or legal basis for a claim was not reasonably available to counsel" ' " will establish cause. *People v. Pitsonbarger*, 205 Ill. 2d 444, 460 (2002) (quoting *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999), quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

¶ 24    We review *de novo* whether Brewer has established cause to allow him to litigate his claim in a successive postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶¶ 13, 26.

¶ 25                                    *No Legal Basis for Cause*

¶ 26    Previously, we determined that Brewer established cause to litigate his sentencing claim "in that when he filed his initial post-conviction petition in 2014, he could not have anticipated the line of cases expanding the holding of *Miller*." *Brewer II*, 2021 IL App (1st) 172314-U, ¶ 26.

Brewer now concedes, however, that he can no longer establish cause by citing *Miller*, as its holding has not been extended to include sentencing claims for emerging adults.

¶ 27    Our previous ruling was made in the context of rapidly evolving sentencing law. For example, the Illinois Supreme Court once held that a mandatory life sentence imposed on a juvenile did not violate the proportionate penalties clause of the Illinois Constitution. *People v. Taylor*, 102 Ill. 2d 201, 206, 209 (1984) (concluding legislature considered possible rehabilitation of juveniles when imposing mandatory minimum sentence of natural life imprisonment for murdering more than one person). But see *People v. Haines*, 2021 IL App (4th) 190612, ¶ 51 (describing as "accepted in Illinois law" the "significant developmental difference not only between minors and adults but also between young adults and older adults").

¶ 28    Three decades later, the Illinois Supreme Court noted that under *Miller*, a mandatory life sentence as applied to a juvenile violates the eighth amendment, thus providing cause to litigate in successive postconviction proceedings. *People v. Davis*, 2014 IL 115595, ¶ 43 (discussing *Miller*, 567 U.S. at 479). The following year, our supreme court directed an emerging adult to litigate his *Miller*-based claim in postconviction proceedings. *People v. Thompson*, 2015 IL 118151, ¶¶ 38, 44.

¶ 29    When considered together, cases like *Taylor*, *Davis*, and *Thompson* suggest that, similar to juveniles, some emerging adults may now be able to litigate *Miller*-based claims in successive postconviction proceedings. But, in *Dorsey*, the supreme court held that "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a [juvenile] defendant to raise a claim under the proportionate penalties clause." *Dorsey*, 2021 IL 123010, ¶ 74. Likewise, in *Moore*, the supreme court stated that "[a]s *Miller* does not directly apply to young

adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause." *Moore*, 2023 IL 126461, ¶ 40.

¶ 30    In *Dorsey* and *Moore*, the supreme court implicitly overruled our previous finding that Brewer had established cause by showing that a new legal basis (*Miller*) was not reasonably available to him during his initial postconviction proceedings (*Brewer II*, 2021 IL App (1st) 172314-U, ¶ 26). In addition, in *Dorsey*, the supreme court discussed how "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing." *Dorsey*, 2021 IL 123010, ¶ 74. In *Moore*, the supreme court pointed out that " 'the essential legal tools' " had always been available for petitioners to use during initial postconviction proceedings. *Moore*, 2023 IL 126461, ¶ 42 (quoting *People v. Clark*, 2023 IL 127273, ¶ 93); see *People v. Harris*, 2018 IL 121932, ¶¶ 46, 48 (directing defendant to raise similar claim in initial postconviction petition).

¶ 31    After considering *Dorsey* and *Moore*, we accept Brewer's concession that *Miller* does not provide him with cause to pursue his claim under the proportionate penalties clause. See *Kathrein v. City of Evanston*, 752 F.3d 680, 685 (7th Cir. 2014) (noting courts have good reason to depart from law of case when, after prior appeal, the United States Supreme Court issues decision inconsistent with case under review).

¶ 32                                    *No Factual Basis for Cause*

¶ 33    Brewer argues that (i) we previously found a factual basis for cause and (ii) recent developments in the scientific community provide essential facts supporting his claim. The record does not support his assertions.

¶ 34 Contrary to Brewer's initial argument, we determined that cause was established by referencing a line of cases that the Illinois Supreme Court has since abrogated or overruled. *Brewer II*, 2021 IL App (1st) 172314-U, ¶¶ 21-26 (citing *People v. Minniefield*, 2020 IL App (1st) 170541, and *People v. Carrasquillo*, 2020 IL App (1st) 180534). The court in *Minniefield* found that "defendant could not have raised a specific claim based on *Miller* and its progeny, where *Miller* was yet to be decided for another five years." *Minniefield*, 2020 IL App (1st) 170541, ¶ 31. Similarly, in *Carrasquillo*, we found that "defendant could not have anticipated the *Miller* line of cases starting in 2012 and certainly could not have raised a claim based on a line of cases that had not even been decided yet." *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 108. Neither of these cases are considered good law anymore. See *Dorsey*, 2021 IL 123010, ¶ 74; *Moore*, 2023 IL 126461, ¶ 42.

¶ 35 Although Brewer overstates *Brewer II*, he nonetheless highlights a significant tension in Illinois sentencing law. There seems to have been a shift following the United States Supreme Court's opinion in *Miller*. While the Illinois Supreme Court recently reiterated that " 'the essential legal tools' " have always been ready for emerging adult petitioners to pick up during initial postconviction proceedings (*Moore*, 2023 IL 126461, ¶ 42 (quoting *Clark*, 2023 IL 127273, ¶ 93)), the numerous petitions filed and cases decided since *Miller* indicate something else.

¶ 36 Brewer's second argument addresses this change. While he identifies potential developments, he has yet to support his claim with evidence on the record, as required by the Act.

¶ 37 Brewer argues that he has "new *evidence* supporting his claim that did not exist at the time of his earlier proceedings." (Emphasis in original.) He cited in his successive petition seeking leave to file in 2017, two scientific studies, both from 2015. But his primary contention relies on a study

published after the filing of his successive petition, which he cites to argue that "scientific research show[s] that his brain was more like a juvenile than an adult." He indicates that the research cited in this study was "published between 2013 and 2022" and is "directly related to the brain development of individuals over 18." He describes the study as "new scientific research," "a significant amount of scientific development," "a turning point in the research," "a consensus," and a "conclusive[ ] determin[ation]."

¶ 38    The cited paper appears in the appendix to Brewer's opening brief. Consequently, the circuit court was unaware of it. We have reviewed the study, "White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys and Policy Makers," which summarizes "mainstream" thought in "developmental neuroscience" as of 2022, "the time it was produced." Catherine Insel *et al.*, White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys, and Policy Makers (Feb. 2022) https://www.researchgate.net/publication/358413055_White_Paper_on_the_Science_of_Late_A dolescence_A_Guide_for_Judges_Attorneys_and_Policy_Makers [https://perma.cc/26HY-6Q7T]. In the executive summary, the authors state that "scientific research has emerged which reinforces the reasoning of the *Miller* decision and, *if its implications are accepted*, extends much of the science that resonated with the *Miller* court to late adolescents (ages 18-21)." (Emphasis added.) *Id*. at 2. The authors also state in the introduction that researchers can now "identify the 'transient immaturity' of youth and emerging young adults and the normal process of self-desistance from criminal misconduct that occurs with maturation," based on "a robust scientific basis." *Id*. at 6-7.

¶ 39    Arguing that he has established cause, Brewer compares his case and its connection to his sentencing claim with the claim raised in *Blalock*. There, the Illinois Supreme Court found that "pattern and practice" evidence provided a factual basis for litigating a second successive petition where the police had tortured the petitioner into making an inculpatory statement. *Blalock*, 2022 IL 126682, ¶¶ 41-46. The petitioner attached new evidence in his petition, including printouts from the 2012 Torture Inquiry and Relief Commission database, affidavits from other alleged victims of abuse by the detectives involved, and complaints made to the Office of Professional Standards. *Id.* ¶¶ 30, 40. The supreme court held that the petitioner had established cause because, while Blalock knew about the torture before trial, he lacked corroborating evidence to support his claim when filing his petition for postconviction relief. *Id.* ¶¶ 41-46.

¶ 40    Contrary to Brewer's assertion, we find that *Blalock* does not apply to his situation. See *Pitsonbarger*, 205 Ill. 2d at 460 (discussing "cause"). By appending this paper to his opening brief before this court, Brewer has failed to present the circuit court with the key factual bases for his claim. See *Blalock*, 2022 IL 126682, ¶¶ 30, 40 (recounting evidence petitioner cited in support of claim). Even assuming the appended paper contains relevant information to his claim, his briefing highlights how critical factual issues remain unresolved. While the study presents a "robust scientific basis" for applying certain scientific insights from *Miller* to emerging adults, this emerging field has yet to reach what Brewer calls a "conclusive[ ] determin[ation]." As the supreme court has repeatedly held, unlike juveniles, emerging adults must adhere to the Act's filing requirements when litigating sentencing claims. See *People v. Holman*, 2017 IL 120655, ¶¶ 31-32 (finding, under "very narrow exception," record sufficient to review juvenile's as-applied

sentencing claim). Given this, we cannot make findings about cause when Brewer fails to draw the conclusions from the study.

¶ 41    Indeed, 10 years ago, our supreme court declined to resolve an emerging adult's sentencing claim in *Thompson* because the record contained "nothing about how that science applies to the circumstances of [the] case" and "[n]or *** any factual development on the issue of whether the rationale of *Miller* should be extended beyond minors under the age of 18." *Thompson*, 2015 IL 118151, ¶ 38.

¶ 42    The law has not yet reached the juncture where neuroscience compels recognition of the claims of emerging adults in the same manner as the claims of juveniles. See, *e.g.*, *Davis*, 2014 IL 115595, ¶ 43 (finding *Miller*, 567 U.S. 460, provided cause for juvenile to file successive petition); *Harris*, 2018 IL 121932, ¶ 60 (noting "line drawn by the [United States] Supreme Court at age 18 was not based primarily on scientific research"). Illinois courts should rely on their own case law, wisdom, and reason to interpret state constitutional provisions. See *People v. Lindsey*, 199 Ill. 2d 460, 467-68 (2002) (citing *People v. McCauley*, 163 Ill. 2d 414, 439 (1994)).

¶ 43    Illinois courts have long allowed newly discovered evidence to inform their understanding of state constitutional guarantees, both in terms of their general meanings and their applications in specific cases. For example, the supreme court has held "as a matter of Illinois constitutional jurisprudence that a claim of newly discovered evidence showing a defendant to be actually innocent of the crime for which he was convicted is cognizable as a matter of due process." *People v. Washington*, 171 Ill. 2d 475, 489 (1996); see *People v. Coleman*, 2013 IL 113307, ¶ 91, (holding defendants may raise innocence claims in successive proceedings under the Act); *People v. Reed*,

2020 IL 124940, ¶ 41 (holding defendants who plead guilty may raise innocence claims under the Act).

¶ 44 The courts and the legislature act as guardians under our constitutional order. *E.g.*, *Washington*, 171 Ill. 2d at 489 (observing "the limited avenues that our legislature has so far seen fit to provide for raising freestanding claims of innocence"); *People v. Buffer*, 2019 IL 122327, ¶ 34 ("choos[ing]" to follow legislature's lead when defining a *de facto* life sentence under Illinois law). Yet, "[g]reat constitutional provisions must be administered with caution." (Internal quotation marks omitted.) *Buffer*, 2019 IL 122327, ¶ 40; see generally *Taylor*, 102 Ill. 2d at 205-06 ("Article I, section 11, of the Constitution is applicable to the legislature as well as to courts."). Newly discovered facts enable the courts and the legislature to address the claims of emerging adults who, due to no fault of their own, must litigate in successive postconviction proceedings. Compare *Moore*, 2023 IL 126461, ¶ 42 (noting petitioners (like Brewer) have " 'the essential legal tools' " (quoting *Clark*, 2023 IL 127273, ¶ 93)), with *Harris*, 2018 IL 121932, ¶ 46 (noting absence of pertinent facts for claims like Brewer's).

¶ 45 Further adjudicating factual cause or reaching the substance of Brewer's claim must await a different proceeding, if at all. See *Blalock*, 2022 IL 126682, ¶¶ 41-46 (finding petitioner established factual basis for cause to litigate second successive postconviction petition). It is worth noting that Illinois courts have already begun litigating the substance of claims like Brewer's. See *People v. Green-Hosey*, 2025 IL App (2d) 240284, ¶ 61 (affirming grant of postconviction relief to emerging adult who successfully litigated as-applied claim in initial petition), *appeal allowed*, No. 131560 (Ill. Sept. 24, 2025). Still, we do not see how we can address these issues as presented by Brewer, particularly since he appended a crucial study to the opening brief before this court.

What the supreme court said in *Harris* applies equally here: "As in *Thompson*, the record here does not contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to defendant's specific facts and circumstances." *Harris*, 2018 IL 121932, ¶ 46.

¶ 46    Brewer has not demonstrated factual cause that would entitle him to litigate a successive petition, and we do not reach his further contention regarding a substantial showing of a constitutional violation. See *Bailey*, 2017 IL 121450, ¶ 26 (noting State may contest cause at second stage of postconviction proceedings).

¶ 47                                   *Reasonable Assistance*

¶ 48    Brewer contends that his counsel provided unreasonable assistance by (i) failing to "supplement or amend" his petition to demonstrate how scientific research applies to his sentencing claim and (ii) failing to argue alternatively that both trial and appellate counsel were ineffective for not framing his earlier youth-based challenges to his sentence under the proportionate penalties clause. We disagree.

¶ 49    Petitioners have the right to reasonable assistance when pursuing postconviction claims, which includes the guidance of lawyers who can properly present their claims. *People v. Addison*, 2023 IL 127119, ¶ 19. To that end, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) requires that counsel consult a petitioner, examine pertinent parts of the record underlying their conviction, and make necessary amendments to their claims.

¶ 50    Counsel must substantially comply with Rule 651(c); a certificate of compliance creates a rebuttable presumption that they have done so. *Addison*, 2023 IL 127119, ¶ 21. A petitioner can challenge this presumption by referencing the record and showing how counsel fell short in

presenting a claim. *Id.* We review counsel's compliance *de novo*. See *People v. Morgan*, 2025 IL 130626, ¶ 51 (*de novo* when reviewing evidence is "documentary in nature").

¶ 51 Brewer asserts counsel failed to supplement or amend his sentencing claim, seemingly overlooking counsel's on-the-record efforts. Counsel submitted a character letter from an associate professor who met Brewer at Statesville Correctional Center, alongside 89 certificates Brewer received from prison programs. This action was in line with the obligation to present Brewer's claim. See *People v. Williams*, 2024 IL 127304, ¶¶ 35-36 (providing example of petitioner-specific allegations pertinent to as-applied claim for emerging adult). Brewer's potential for rehabilitation was a core element of his claim. See *Green-Hosey*, 2025 IL App (2d) 240284, ¶¶ 57-59 (discussing elements, including rehabilitation, of as-applied claim under proportionate penalties clause).

¶ 52 Nevertheless, Brewer maintains that additional amendments should have been filed "specifically applying the emerging scientific research on brain development to [his] facts and circumstances." Counsel filed a certificate stating that he had consulted with Brewer and that the alleged facts were "true and correct and represent[ed] the entirety of [Brewer's] claim." Consequently, counsel certified that the entirety of Brewer's claim was presented in amended form. While Brewer may disagree with this certification, the presumption of compliance is strong, and counsel's certification remains unrebutted. *Addison*, 2023 IL 127119, ¶ 21 (record must demonstrate how counsel failed).

¶ 53 Moreover, we note that counsel's strategy on remand closely followed *Brewer II*, which the supreme court has implicitly overruled. *Supra* ¶ 29. Generally, counsel does not act unreasonably by adhering to our statements of law during ongoing litigation. See *People v. Patterson*, 154 Ill. 2d 414, 468-69 (1992) (discussing "law of the case" doctrine). But to the extent

that our previous decision may have adversely affected the fairness of the remand proceedings, the supreme court could intervene by granting supervisory relief. See generally *In re J.T.*, 221 Ill. 2d 338, 348 (2006) (considering whether "the normal appellate process cannot provide adequate relief" as prerequisite to granting supervisory relief).

¶ 54 The supreme court has recently indicated that petitioners like Brewer have always possessed the necessary legal tools to raise claims related to sentencing. See *Dorsey*, 2021 IL 123010, ¶ 74; *Moore*, 2023 IL 126461, ¶ 42. Consistent with this observation, Brewer contends that counsel should have amended the petition to allege that trial and appellate counsel failed to frame his sentencing contentions under the proportionate penalties clause properly.

¶ 55 But, this petition was not his first under the Act. If the essential legal tools were available to counsel before postconviction proceedings, they were also available to Brewer when he prepared his initial petition for postconviction relief. See *Dorsey*, 2021 IL 123010, ¶ 74; *Moore*, 2023 IL 126461, ¶ 42. Under the logic of *Dorsey* and *Moore*, Brewer's criticism of postconviction counsel's performance is unfounded. He cannot show that counsel provided unreasonable assistance during successive postconviction proceedings by failing to make an amendment Brewer had "waived" when litigating his initial postconviction petition. See 725 ILCS 5/122-3 (West 2022) (defining waiver under Act).

¶ 56                                  Conclusion

¶ 57 The record before us offers no basis to find that Brewer may litigate his claim in successive postconviction proceedings.

¶ 58 Affirmed.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 01-CR-18452; the Hon. Kenneth J. Wadas, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Lauren A. Bauser, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Erin K. Slattery, and David H. Iskowich, Assistant State's Attorneys, of counsel), for the People. |