2026 IL App (1st) 241534-U

FIRST DIVISION
May 11, 2026

No. 1-24-1534

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 08 CR 02058 01 |
| JAVIER ASCENCIO, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Joanne F. Rosado, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**O R D E R**

¶ 1    *Held*:    The circuit court's second-stage dismissal of the successive postconviction petition is affirmed where the petitioner failed to establish cause for not raising his youth-based proportionate penalties challenge to his mandatory natural life sentence in an earlier proceeding.

¶ 2    The petitioner, Javier Ascencio, appeals from the second-stage dismissal of his successive petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West

2020)). On appeal, he contends that dismissal was improper because he made a substantial showing that his mandatory natural life sentence, imposed for a crime he committed when he was 18 years old, was unconstitutional, as applied to him, under the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). For the following reasons, we affirm.[1]

¶ 3                                I. BACKGROUND

¶ 4     Because the procedural history of this case and the evidence adduced at the petitioner's trial are fully articulated in our decisions addressing the petitioner's direct appeal (*People v. Ascencio*, 2012 IL App (1st) 100378 (unpublished order pursuant to Rule 23) (*Ascencio I*)), and the dismissal of his initial postconviction petition (*People v. Ascencio*, 2015 IL App (1st) 131790-U (*Ascencio II*)), we set forth only those facts relevant to the resolution of the issues raised herein.

¶ 5     This cause of action stems from a shooting, which occurred on May 5, 2007, at a warehouse at 4615 West Huron in Chicago, and resulted in the deaths of two victims (Guillermo Ortega and Rigoberto Castaneda) and injuries to two others (Edgar Irenio and Denisse Del Real). The petitioner was charged with, *inter alia*, two counts of first degree murder and two counts of aggravated battery for his involvement in the shooting.

¶ 6     In December 2009, the petitioner proceeded with a jury trial at which the following summarized evidence was adduced. In the early morning hours of May 5, 2007, about 60 and 100 people, including members of several rival gangs, attended a party at the warehouse. After tensions escalated between the Gangster Disciples and the Latin Kings, the petitioner, then age 18, displayed a gang sign, shouted "King Love," and fired his gun 5 to 10 times into the crowd, injuring

---

[1] We note that on September 26, 2025, the State filed a motion for summary disposition of this appeal pursuant to Illinois Supreme Court Rule (Rule) 23(c)(2), (4) (Ill. S. Ct. R. 23(c) (2), (4) (eff. June 3, 2025)). On October 7, 2025, this court ordered that the State's motion be taken with the case. Because we now issue the instant decision, we deny that motion.

Del Real and killing Ortega. Seconds later, an unknown gunman issued more gunshots, injuring Irenio and killing Castaneda. Ballistic evidence established that the bullets that killed Castanea and Ortega came from different guns. Video footage from the warehouse showed that the petitioner was accompanied by another man before firing into the crowd and heading toward the front door with his companion. The video footage further showed that as the two men headed toward the exit, a fight broke out in the middle of the room and bottles were thrown in several directions. The video footage next depicted the petitioner tapping his companion on the shoulder, after which that individual turned around and fired several shots into the crowd before leaving the scene with the petitioner. The petitioner presented no evidence on his own behalf.

¶ 7    Over defense counsel's objection, the jury was instructed that the petitioner could be convicted on an accountability theory as to the crimes involving each of the four victims: the first degree murders of Ortega and Castaneda, and the aggravated batteries (with a firearm) of Irenio and Del Real. The jury found the petitioner guilty of all four crimes.

¶ 8    At the subsequent sentencing hearing, the parties presented arguments in aggravation and mitigation. The State presented three victim impact statements (from Castaneda's mother and sister, and Ortega's father) and argued that because the petitioner was an adult, and was found guilty of murdering more than one victim, pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (730 ILCS 5-8-1(a)(1)(c)(ii) (West 2006)) the sentencing court had no discretion and was required to impose a sentence of natural life imprisonment. The State further argued that the two convictions for aggravated battery (with a firearm) were both Class X offenses, necessitating lengthy sentences.

¶ 9    Conversely, defense counsel urged the court not sentence the petitioner to natural life imprisonment. Counsel acknowledged that the sentencing statute mandated such a sentence but

asserted that it was not appropriate under the facts of this case because the petitioner had not himself shot the second victim and had been found guilty of the second murder solely based on an accountability theory. Counsel also asked the court to take into consideration that the petitioner was only 18 years old when he committed the instant offense and had absolutely no prior criminal history, even as a juvenile. In addition, counsel pointed out that, according to the presentence investigation report (PSI), the petitioner had attended high school until the tenth grade, had quit school to help with his family's "financial stresses," and had been gainfully employed as a landscaper and tire technician until his arrest in the instant case.

¶ 10    The petitioner made a brief statement in allocution, asserting, *inter alia*, that he would like his family and the sentencing court to know that "he was very lost[.]"

¶ 11    After hearing the parties' arguments, the court reluctantly sentenced the petitioner to natural life imprisonment on the two murder convictions, and 20 years for each aggravated battery count, to be served concurrently with the natural life sentence. In doing so, the court first commented on the tragic circumstances of the instant case, noting that "while it's not uncommon for young men to have disputes," when "disagreements among young men escalate from fists to firearms then the result is what we have here today," namely "two families who had to bury their sons" and "another family who is going to see their son sentenced to the penitentiary." The court reiterated that it had no discretion to impose a lesser sentence because "the legislature of this state has mandated that when someone is convicted of killing more than one person," the punishment is "natural life in prison." As the court stated:

> "I don't take any joy in doing this, sir. You're a young man, as was pointed out, you have
>
> no record, but when your conduct and your actions speak volumes and when you conduct
>
> yourself in that manner and use a weapon in that manner and fire into a crowd in that

4

manner, this is the outcome."

¶ 12    On direct appeal, the petitioner argued that the State failed to prove beyond a reasonable doubt that he was accountable for the murder of Castaneda or the injuries to Irenio. The petitioner conceded the existence of the second gunman and the contact he had with him before the second round of shots but argued that the second gunman's identity or relationship with the Latin Kings was unknown and denied that the two of them had acted in concert. This court rejected the petitioner's arguments and affirmed his convictions. *Ascencio I*, 2021 IL App (1st) 100378, ¶¶ 21-11. The petitioner's motion for leave to appeal to the supreme court was subsequently denied. *People v. Ascencio*, 968 N.E.2d 1067 (Ill. 2012).

¶ 13    On February 28, 2013, by way of private counsel, the petitioner filed his first postconviction petition, asserting numerous claims of ineffective assistance of counsel. Among other things, the petitioner contended that his trial counsel failed to: (1) negotiate a better plea deal for him than the one offered by the State prior to trial; (2) question the jury during *voire dire* about potential gang bias; (3) challenge his gang membership at trial; (4) impeach an eyewitness; and (5) object to certain arguments made by the prosecutor in closing argument. The circuit court summarily dismissed the petition, and we affirmed that dismissal on February 10, 2015. *Ascencio II*, 2015 IL App (1st) 131790-U, ¶ 35. The petitioner's subsequent request for leave to appeal to our supreme court was denied. *People v. Ascencio*, 60 N.E.3d 875 (Ill. 2016).

¶ 14    On October 9, 2020, the petitioner, represented by private counsel, filed a motion for leave to file the instant successive postconviction petition. Therein, the petitioner argued that his mandatory natural life sentence, imposed for an offense that he committed when he was only 18 years old, without proper consideration of his youth and its attendant characteristics, violated both the eighth amendment of the United Sates Constitution (U.S. Const., amend. VIII) and the Illinois

proportionate penalties clause. (Ill. Const. 1970, art. I, § 11).

¶ 15    The petitioner briefly alleged cause for his inability to raise this claim earlier and prejudice stemming from the imposition of his sentence. With respect to cause, relying on *Miller v. Alabama*, 567 U.S. 460 (2012) and its progeny, the petitioner argued, albeit inartfully, that the legal and factual basis for his claim did not exist earlier. With respect to prejudice, the petitioner asserted that he did not have the opportunity to present any mitigating evidence for the sentencing judge regarding his age and the "wealth of characteristics and circumstances attendant to it."

¶ 16    In support, the petitioner attached a July 15, 2020, psychological assessment by licensed clinical psychologist Dr. Mitchell Hicks, and ten testimonial letters from family and friends.

¶ 17    In his report, Dr. Hicks explained that the purpose of his evaluation was to "attempt to reconstruct [the petitioner's] psychological status" (*i.e.*, his "social and emotional functioning") at the time of the offense and "to document his current functioning in order to determine to what extent [he] [wa]s amenable to rehabilitation" under *Miller*. To complete his evaluation, Dr. Hicks conducted a clinical interview with the petitioner on February 28, 2020, and assessed the petitioner using the Personality Assessment Inventory (PAI) and Million Clinical Multitaxial Inventory-IV (MCMI-IV). In addition, he reviewed, *inter alia*, transcripts from the petitioner's sentencing hearing, the petitioner's records and disciplinary reports from the Illinois Department of Corrections (IDOC) and his March 20, 2018, certificate of high school equivalency completion.

¶ 18    According to Dr. Hicks, the petitioner's scores on the PAI and MCMI-IV assessments "were consistent with a person who is not evidencing any major psychological concern or distress, and with personality patterns that reflect a disciplined or regimented mental life in order to curb turbulence and anger (which could be more a past concern)." The results of these assessments were consistent with the petitioner's presentation during his clinical interview with Dr. Hicks, at which

he appeared, *inter alia*, clear, coherent, goal oriented, polite, forthcoming, and with "a broad and reactive mood-congruent affect."

¶ 19    According to Dr. Hicks, the petitioner's upbringing and social environment were "quite conducive to the development of violence." The petitioner grew up in poverty and lived with his parents and extended family. The petitioner's paternal grandparents did not like the petitioner or his mother and often belittled them. The petitioner's father "drank a lot," was "quite mean," and often beat him. The neighborhood in which the petitioner resided was plagued with violence. When he was in fourth or fifth grade, the petitioner was struck with a heavy object "by a kid he believed to be in a gang," resulting in a scar above his left eyebrow. After two of the petitioner's friends were killed by a gang member, he began carrying a knife and subsequently a gun for protection, and smoking marijuana to help with feelings of anxiety. By his freshman year of high school, the petitioner started associating with the Latin Kings in his neighborhood. Within a year, the petitioner dropped out of high school and found a job as a tire technician. Even though he "tried to stay off the streets and out of trouble," it was difficult because most of his friends in the neighborhood were older gang members, whom he was "always trying to impress." The petitioner had no contact with the criminal justice system until the instant offense and had never fired a gun before that night.

¶ 20    According to Dr. Hicks' report, despite the gravity of his offense, the petitioner was not permanently incorrigible. The petitioner had taken responsibility for his actions. During his clinical interview, he freely admitted his participation in the crime and acknowledged that he shot into the crowd because he was anxious, had been using cocaine and drinking heavily, and "felt pressure to be involved" "because of what he was being told by older members of the gang." While the petitioner never "meant to kill anyone," he did not attempt to minimize his actions and instead

expressed remorse for what he had done and welcomed the opportunity to meet with the victims' families and apologize to them.

¶ 21    In addition, according to Dr. Hicks, the petitioner's "relatively clean disciplinary record" in prison and his "attempts to improve himself personally and educationally" showed that he was "amenable to rehabilitation efforts." Specifically, while the petitioner initially participated in a brawl with other inmates when brought to Cook County jail, after time in segregation, at the age of 24, he decided to "stay out of trouble." Since then, the petitioner has had no violent infractions.[2] Instead, he has worked in various jobs and benefited from the educational programs available to him. After completing his General Education Degree (GED), the petitioner successfully obtained a transfer from Menard Correctional Center (CC) to Statesville CC, where he could partake in more educational opportunities, and was presently in line for barber school and had requested to take courses from Northwestern and DePaul through their prison-based programs. The petitioner is focused on bettering himself regardless of the possibility that he may remain in prison for the rest of his life.

¶ 22    In addition to Dr. Hicks' evaluation, in support of his successive petition, the petitioner also provided ten letters by friends and family members attesting to his character and rehabilitative potential.[3] Briefly summarized, the letters collectively describe the violent neighborhood in which the petitioner grew up and the petitioner's path to associating with gang members from the neighborhood, and assert that without the "peer pressure" from these "new friends," the petitioner never would have found himself incarcerated because he was good, intelligent, kind, funny,

---

[2] The petitioner has received one ticket for "destruction of state property" for scratching a security seal off his television set to which he pleaded guilty and paid restitution for the seal's replacement, and several minor grievances: one resulting from believing medical care he received was inadequate and the other after being denied transfer without an explanation.

[3] Seven of these letters are dated from 2020, three have no date, and none are notarized.

supportive, and full of potential. The letters further assert that over the last two decades of his incarceration the petitioner has stayed out of trouble, learned from his mistakes, and bettered himself. In addition, according to the letters, the petitioner's family members and friends vow to support the petitioner upon release from prison and help him obtain employment.

¶ 23    The circuit court granted the petitioner's motion for leave to file his successive postconviction petition and the petition was docketed for second stage proceedings.[4] After private counsel filed a Rule 651(c) certificate, on January 12, 2023, the State filed a motion to dismiss. Relevant to this appeal, the State argued that pursuant to our supreme court's holding in *People v. Dorsey*, 2021 IL 123010, dismissal of the petitioner's successive petition was proper because the petitioner had failed to establish the requisite cause for failing to raise his sentencing challenge in an earlier proceeding. On October 10, 2023, the State filed a motion to cite *People v. Moore*, 2023 IL 126461, as additional authority, which was granted.

¶ 24    On May 7, 2024, the circuit court heard arguments on the State's motion to dismiss, after which it reserved its ruling to review several decisions provided to it by postconviction counsel that day.  On July 10, 2024, the circuit court granted the State's motion to dismiss, holding  that the decision in *Moore* controlled and that the petitioner had failed to establish the requisite cause so as to be able to proceed with his petition. The petitioner now appeals.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, the petitioner solely argues that the circuit court erred when it dismissed his successive petition at the second-stage of postconviction proceedings because he made a substantial showing that his mandatory natural life sentence was unconstitutional, as applied to

---

[4] We note that the record does not contain a transcript of the hearing at which the court granted leave to file. However, the court's criminal disposition sheet from December 17, 2021, notes that "leave to file was previously granted," and all subsequent disposition sheets refer to the postconviction proceedings as being at "second stage."

him under the Illinois proportionate penalties clause.[5] The petitioner asserts that his sentence violated the proportionate penalties clause because the trial court was unable to consider his youth, its attended characteristics, his degree of participation, or any other mitigating factors in sentencing. The State asserts that regardless of the merits of the petitioner's proportionate penalties claim, dismissal was proper because the petitioner failed to establish the requisite cause for his failure to raise this claim earlier. For the following reasons, we agree with the State.

¶ 27    The Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a mechanism by which criminal defendants may address substantial violations of their constitutional rights that occurred either at trial or at sentencing. See *People v. Cotto*, 2016 IL 119006, ¶ 26; *People v. English*, 2013 IL 112890, ¶ 22. Because the Act is not a substitute for an appeal, but rather, a collateral attack on a final judgment, issues that were not presented in an original postconviction petition are forfeited and issues that were previously raised and addressed on direct appeal are barred by the doctrine of *res judicata. People v. Clark*, 2023 IL 127273, ¶ 38 (citing 725 ILCS 5/122-3 (West 2014)); see also *People v. Sanders*, 2016 IL 118123, ¶ 24.

¶ 28    Consistent with these principles, the Act contemplates the filing of only one petition without leave of court and codifies the cause-and-prejudice test as the prerequisite to obtaining such relief. 725 ILCS 5/122-1(f) (West 2020). *People v. Lusby*, 2020 IL 124046, ¶ 27; *People v. Edwards*, 2012 IL 111711, ¶ 23. To obtain leave, the petitioner must establish cause by identifying an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings and prejudice by demonstrating that the claim not raised earlier so infected the trial that the resulting conviction or sentence violated due process. *Id.*

¶ 29    If, as here, the circuit court grants leave to file a successive petition, the petition is docketed

---

[5] On appeal, the petitioner abandons his eighth amendment challenge to his sentence, and we need not address it.

for second-stage proceedings, where the petitioner must make a substantial showing of a constitutional violation. *People v. Harper*, 2013 IL App (1st) 102181, ¶ 33; *Cotto*, 2016 IL 119006, ¶ 27. At the second stage, the State may file responsive pleadings, and seek dismissal of the petition on any ground, including procedural default. See *People v. Bailey*, 2017 IL 121450, ¶ 26. This permits the State to, once again, argue that dismissal is proper because the petitioner failed "to prove cause and prejudice for not having raised the claims in the initial postconviction petition." *Id*. Our review of the circuit court's second-stage dismissal of a petition is *de novo*. *People v. Johnson*, 2024 IL App (1st) 220419, ¶ 65.

¶ 30    In the present case, pursuant to our supreme court's decisions in *Clark*, 2023 IL 127273, and *Moore*, 2023 IL 126461, we are compelled to conclude that the circuit court properly dismissed the petition on the basis that the petitioner failed to show cause for not raising his as-applied proportionate penalties sentencing challenge in an earlier proceeding.

¶ 31    Under the proportionate penalties clause of the Illinois Constitution, all penalties must "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Spencer*, 2025 IL 130015, ¶ 42. A sentence violates the proportionate penalties clause when, *inter alia*, the penalty imposed is " 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of our community.' " *People v. Clark*, 2023 IL 127273, ¶ 51 (quoting *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002)). "Cruel" and "degrading" have never been defined because "as our society evolves, so too do our concepts of elemental decency and fairness, which shape the 'moral sense' of [our] community." *Id*. (quoting *Leon Miller*, 202 Ill. 2d at 339).

¶ 32    This court has previously traced the history of our proportionate penalties clause jurisprudence as it relates to young adults serving life sentences, and we need not reiterate it fully

again here. *People v. Horshaw*, 2024 IL App (1st) 182047-B ¶¶ 47-55. Suffice it to say, in *Thompson* and *Harris*, our supreme court initially "opened the door" for "emerging adult offenders" (who are 18 or 19 years old), such as the petitioner here, to demonstrate through an adequate factual record that their own "specific characteristics were so like those of a juvenile that imposition of a life sentence absent the safeguards established in *Miller* was cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community." *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 25; see *Thompson*, 2015 IL 118151; *Harris*, 2018 IL 121932.

¶ 33     However, that precedent has changed, and more recently, our supreme court has severely curtailed the ability of young adult petitioners to raise such claims by way of successive petitions. See *Clark*, 2023 IL 127273, ¶¶ 24-26; *Moore*, 2023 IL 126461, ¶¶ 40-42. Specifically, in *Clark* and *Moore*, our supreme court held that "the essential legal tools" to raise a proportionate penalties' claim had always been available for petitioners during initial postconviction proceedings. See *Clark*, 2023 IL 127273, ¶ 93; *Moore*, 2023 IL 126461, ¶ 42. Because "*Miller* did not change the law applicable to young adults, it does not provide cause for the proportionate penalties challenges advanced" in a successive petition. *Moore*, 2023 IL 126461, ¶ 42.

¶ 34     In applying *Clark* and *Moore*, this appellate court has repeatedly observed that "*Thompson* and *Harris* opened the door only wide enough to accommodate [proportionate penalties'] claims involving mandatory life sentences that were raised in initial postconviction petitions." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62; see also *e.g. People v. Brewer*, 2025 IL App (1st) 240088, ¶¶ 29-30, *People v. Minniefield*, 2025 IL App (1st) 240463-U, ¶ 54; *People v. Handy*, 2025 IL App (1st) 231568-U, ¶ 58; *People v. Davis*, 2025 IL App (1st) 231499-U, ¶¶ 19, 24. Our jurisprudence now collectively holds that a proportionate penalties challenge raised in a successive petition

12

"should be viewed as nothing more than an extension of proportionate penalties claims that have existed all along," such that the petitioner cannot rely on the unavailability of *Miller* or *Miller*-based proportionate penalties precedent as cause for failure to make this argument in his initial postconviction proceeding. *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62 (citing *People v. Dorsey*, 2021 IL 123010, ¶ 74; *Clark*, 2023 IL 127273, ¶¶ 92-93; and *People v. Hilliard*, 2023 IL 128186, ¶ 28); see also *e.g. People v. McGee*, 2025 IL App (1st) 231591-U, ¶ 32, *pet. for leave to appeal allowed*, 270 N.E.3d 828 (Ill. 2025); *People v. Scaggs*, 2025 IL App (1st) 240953-U, ¶ 49; *People v. Handy*, 2025 IL App (1st) 231568-U, ¶ 58; *People v. Jones*, 2025 IL App (5th) 230511-U, ¶ 38.

¶ 35    Under the narrow directive of *Clark* and *Moore*, we have also reluctantly applied this same rationale to the prior unavailability of factual evidence tending to prove that the petitioner was more akin to a juvenile than an adult and, therefore, more prone to peer pressure and bad judgment at the time he committed the offense, and rejected arguments that the unavailability of such evidence provides the necessary cause for raising a proportionate penalties' claim in a successive petition. See *Scaggs*, 2025 IL App (1st) 240953-U, ¶¶ 46, 49-51; *People v. Robinson*, 2025 IL App (1st) 231419-U, ¶¶ 59, 62-63; *People v. Searles*, 2024 IL App (1st) 210043-U, ¶¶ 13-17. In doing so, we have explained that the factual basis for a sentencing challenge based on a petitioner's age "is that fully developed adults are different from young adults who are still developing," which is a distinction "Illinois courts have long recognized." *Searles*, 2024 IL App (1st) 210043-U, ¶ 17; *People v. Haines*, 2021 IL App 190612, ¶ 47. In particular, we found that in *Clark*, our supreme court clarified that "Illinois cases have long held that the proportionate penalties clause required the circuit court to take into account the defendant's 'youth' and 'mentality' in fashioning an appropriate sentence" and that "[a]s far back as 1894, this court recognized that '[t]here is in the law of nature, as well as in the law that governs society, a marked distinction between persons of

13

mature age and those who are minors' " and " '[t]he habits and characters of the latter are, presumably, to a large extent as yet unformed and unsettled.' " *Id.* ¶ 92 (quoting *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 423 (1894)); see also *French*, 2022 IL App (1st) 220122, ¶¶ 33-34 ("because the Illinois proportionate penalties clause existed long before [the petitioner] filed his initial postconviction petition" he could have "summon[ed] the evidentiary support" and "raised the claim at that time").

¶ 36 Under this precedent, we are compelled to conclude that the petitioner here cannot establish the requisite cause for failing to raise a proportionate penalties' claim in his initial postconviction proceedings, since such a claim "was always available" to him "in some form." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62 (citing *Moore*, 2023 IL 12646, ¶¶ 40-42)); see also *People v. French*, 2022 IL App (1st) 220122, ¶¶ 33-34 (rejecting the defendant's assertion that "the lack of evidentiary support," *i.e.*, an individualized report from a psychologist detailing his "developmental pathway from childhood to adulthood," which he obtained only after he filed his initial postconviction petition, was sufficient to state the requisite cause necessary to overcome the bar on successive petitions). Accordingly, we hold that the circuit court properly dismissed his successive petition on this basis. See *Bailey*, 2017 IL 121450, ¶ 26 (at the second stage of postconviction proceedings the State may "seek dismissal of the petition on any grounds, including the defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition.").

¶ 37 In coming to this conclusion, we emphasize that we are far from indifferent to the petitioner's predicament, and recognize that despite all his efforts in obtaining Dr. Hicks' evaluation and the testimonial letters from his family and friends, which provide the type of evidence our supreme court has signaled is necessary to support an as-applied youth-based

proportionate penalties challenge (see *House*, 2021 IL 125124, ¶ 29), the petitioner has no meaningful path to demonstrate his rehabilitative potential. As such, it appears that because of one inexcusable and tragic act, committed when he was only 18 years old, he is doomed to remain in prison for the rest of his life.[6] Nonetheless, "we are bound by our supreme court's decisions regarding age-based proportionate penalties challenges for young adults." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62. Until our supreme relaxes the cause requirement or our legislature abolishes cause altogether,[7] we are bound to follow the narrow dictates of our supreme court.

¶ 38    Because we find that the petitioner has failed to establish cause, we need not determine whether he made the requisite showing of prejudice. See *People v. Guerrero*, 2012 IL 112020, ¶¶ 15, 22 (holding that where the petitioner failed to establish cause there was no need to consider prejudice because "both elements or prongs of the cause-and-prejudice test must be satisfied in order for the [petitioner] to prevail.").

¶ 39                                 III. CONCLUSION

¶ 40    For these reasons, we affirm the circuit court's second-stage dismissal of the successive postconviction petition.

¶ 41    Affirmed.

---

[6] According to the IDOC website, of which we may take judicial notice, the petitioner has no discharge date and is ineligible for parole. See *People v. Ware*, 2014 IL App (1st) 120485, ¶ 29 (noting that this court may take judicial notice of information appearing on the IDOC website).

[7] We note that on April 30, 2025, the Illinois senate voted to pass Senate Bill 0248 (SB 0248) (104th Ill. Gen. Assembly Senate Bill 0248, 2025 Sess.), which proposes to amend the Code of Criminal Procedure of 1963 to eliminate the cause element of the cause-and-prejudice test for persons under 21 years old, who seek leave to file a successive postconviction petition claiming violations of the Illinois proportionate penalties clause. This proposed legislation has passed from the Illinois Senate to the Illinois House. As House Bill 1858 (HB 1858) (104th Ill. Gen. Assembly House Bill 1858, 2025 Sess. 2025), it has currently been referred to the House Rules Committee.