2026 IL App (1st) 250240-U

FIRST DIVISION
June 15, 2026

No. 1-25-0240

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 16315 |
| | ) | |
| MONTEZ ANDERSON, | ) | Honorable |
| | ) | Natosha Toller, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:  We affirm the circuit court of Cook County's judgment that denied defendant's motion for leave to file a successive postconviction petition based on the proportionate penalties clause for failure to raise this claim in earlier proceedings. Defendant argued that new research into the brain development of young adults provided the previously unavailable factual basis for his claim. However, the trial court concluded that defendant failed to establish cause; although the defendant cited new scientific research, the court determined that the claim was previously available to him in some form, including a factual basis, during prior postconviction proceedings. Therefore, defendant did not establish cause for leave to file a successive postconviction petition.

¶ 2    The State charged defendant, Montez Anderson, with attempt (first degree murder) and

armed robbery with a firearm. At the time of the offense, defendant was 18 years old. After a

trial in the circuit court of Cook County, defendant was convicted and sentenced to consecutive

prison terms: 26 years for attempt (first degree murder) and 23 years for armed robbery with a firearm, resulting in a total sentence of 49 years.

¶ 3 Following his conviction, defendant pursued appellate and postconviction relief. In 2014, he filed a direct appeal, and in 2015, he submitted an initial petition for postconviction relief. In 2024, defendant filed a motion for leave to file a successive petition for postconviction relief. The circuit court of Cook County denied this motion. For the reasons set forth below, we affirm the circuit court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 4 BACKGROUND

¶ 5 In June 2012, following a jury trial, the circuit court of Cook County convicted defendant, Montez Anderson, of attempt (first degree murder) and armed robbery with a firearm. We summarized the evidence presented at defendant's trial in defendant's direct appeal. *People v. Anderson*, 2014 IL App (1st) 122561-U. At trial, the victim testified that a group of five individuals called him over to their location. During a verbal exchange one of the individuals directed the victim's attention to defendant, and defendant displayed a handgun. Defendant and another individual directed the victim to a secluded location and removed property from the victim as defendant pointed the gun at the victim's chest. At one point, the victim dropped a piece of property the individuals demanded from him, and when defendant bent to pick it up, the victim fled. The victim heard gunshots, fell, and realized he had been shot in the legs. The victim tried to keep running but fell again. Defendant approached the victim and "shot him two or three more times, in his stomach and right arm." *Id*. ¶¶ 8-9.

¶ 6 "The jury found defendant guilty of armed robbery and attempted first degree murder, both committed while armed with a firearm. The jury also found that, while committing those

offenses, defendant did not personally discharge a firearm that caused great bodily harm." *Anderson*, 2014 IL App (1st) 122561-U, ¶ 16. The trial court sentenced defendant for attempt (first degree murder) to 11 years' imprisonment with a 15-year enhancement for the discharge of a firearm during the commission of the offense, for a total of 26 years; and 8 years' imprisonment with a 15-year enhancement for the discharge of a firearm during the commission of the offense, for a total of 23 years, with the sentences to run consecutively. Thus the court sentenced defendant to a total of 49 years' imprisonment with defendant required to serve 85% of the sentence. *Id*. ¶ 16. Defendant filed a motion to reconsider his sentence that asked the trial court to "reconsider whether it is obligated to sentence the Defendant to consecutive sentences" and argued that "the sentence is excessive and unreasonable considering the facts and circumstances in this case." The trial court denied defendant's motion to reconsider. Defendant did not appeal his sentence. *Id*. ¶ 17.

¶ 7    On June 24, 2015, defendant, acting *pro se*, filed an initial petition for postconviction relief. Defendant's *pro se* initial postconviction petition claimed ineffective assistance of counsel on direct appeal for failing to raise several allegedly meritorious issues, including that "the 15 year sentencing enhancement for armed robbery while in possession of a firearm violates the proportionate penalties clause of the State constitution and is therefore unenforceable."  On September 18, 2015, the trial court summarily dismissed defendant's *pro se* petition.

¶ 8    On April 22, 2024, defendant, through retained postconviction counsel, filed a "Motion for Leave to File Successive Petition for Postconviction." The motion for leave to file a successive postconviction petition stated that the issues in defendant's initial *pro se* petition are all different from those presented in the motion for leave to file a successive petition. The motion then stated, "The law as to young adults and *De facto* life sentences has changed since

1-25-0240

[defendant's] direct appeal and first post-conviction petition." Defendant's motion noted our "supreme court's holdings in *Thompson* and *Harris*,"[1] and stated that defendant's motion was "challenging the constitutionality of his sentence under both the eighth amendment *** and *** the proportionate penalties clause." Defendant's eighth amendment argument included the assertion that defendant's mentality and level of maturity at the time of his offense made him more similar to adolescents than fully mature adults. In support of that contention, defendant cited an exhibit attached to the motion, which he titled "Science."

¶ 9    Defendant argued his sentence amounts to a *de facto* life sentence under *People v. Buffer*, 2019 IL 122327, and that a "sentence violates the proportionate penalties clause if 'the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' [Citation.]" Defendant's motion described defendant's "personal characteristics" and contained information about his upbringing, and concluded that defendant's "stunted *** mental growth, development, and maturity [left] him no different than his adolescent counterparts under the age of 18." Defendant argued that none of these characteristics were discussed at sentencing "as the *Miller* factors were not yet in existence."

¶ 10    Defendant's motion further argued that he satisfied the cause-and-prejudice test for his successive petition because *Miller* became retroactive to cases on collateral review involving a discretionary *de facto* life sentence against a young adult through a series of decisions beginning with *People v. Davis*, 2014 IL 115595, and concluding with *People v. Holman*, 2017 IL 120655 and *People v. Buffer*, 2019 IL 122327, and that this development of the caselaw identified "an

---

[1]    "[T]hose cases addressed the possibility of a defendant raising a *Miller*-based challenge with respect to mandatory life sentences in initial postconviction petitions. *Thompson*, 2015 IL 118151, ¶¶ 1, 44, *Harris*, 2018 IL 121932, ¶¶ 1, 48." *People v. Clark*, 2023 IL 127273, ¶ 88.

objective factor that impeded his ability to raise this claim previously." Defendant further argued that he " 'plead specific and individual characteristics as related to [him]" as " 'the only way to establish that [he is] entitled to the protections provided by *Miller* and its progeny as interpreted by the Illinois Supreme Court.' " (Emphasis omitted.) Defendant argued that "a 19-year-old is no different than juveniles based on previously unavailable science and social science research that has brought about a change in law regarding sentences of youthful offenders where there is evidence of immature brain development associated with youth." Defendant argued that his as-applied challenge under the proportionate penalties clause is fact-specific, and his immaturity should have been considered to effectuate the mandate of restoring defendant to useful citizenship. Defendant specifically argued that he "has suffered most, if not all of the mitigating factors and characteristics of youth and immaturity as described in '*Miller*, *Roper*, *Graham*, *House* and *Harris*,' and that there was a reasonable probability that [defendant] would have received a lesser sentence within his life expectancy had the trial court been able to consider his individualized characteristics."

¶ 11    On September 13, 2024, the trial court held a hearing on defendant's motion for leave to file a successive petition for postconviction relief. Following the hearing, the court denied defendant's motion. The trial court relied on our supreme court's decision in *People v. Moore*, 2023 IL 126461, and found that,

> "our Illinois Supreme Court held that *Miller* and its progeny do not provide cause
> for young adults to raise claims under the Eighth Amendment or the proportionate
> penalties clause of the Illinois Constitution. The defendant's reliance on changes
> in case law; case law that was not available to him at the time he filed his initial
> post-conviction petition; and articles regarding science research and brain

development, do not provide the necessary cause for leave to file a successive post-conviction petition."

¶ 12 Defendant filed a motion to reconsider, which the trial court denied.

¶ 13 This appeal followed.

¶ 14                                  ANALYSIS

¶ 15 This is an appeal from a judgment that denied a motion for leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)).

"The Act contemplates the filing of only one postconviction petition. [Citation.] A defendant seeking to file a successive petition must obtain leave of court. [Citation.] To do so, the defendant must adequately allege facts demonstrating a *prima facie* showing of cause and prejudice. [Citation.] Specifically, a defendant must demonstrate that an objective factor [external to the defense] impeded his ability to raise his claim during his initial postconviction proceedings, and the claim so infected his trial that his conviction or sentence violated due process. [Citations.] Cause-and-prejudice is a higher standard than the frivolous or patently without merit standard applied at the first stage of proceedings under the Act. [Citation.] *** We review *de novo* the denial of leave to file a successive petition. [Citation.]" *People v. Moore*, 2021 IL App (1st) 191150-U, ¶ 32, *People v. Britt-El*, 206 Ill. 2d 331, 339 (2002).

¶ 16 "What constitutes cause will necessarily depend on the unique circumstances of each case. However, this court has observed that a showing that the factual *or* legal basis for a claim was not reasonably available to counsel will constitute cause." (Emphasis added and internal quotation marks and citations omitted.) *People v. Blalock*, 2022 IL 126682, ¶ 39. "At the

pleading stage for motions for leave to file, all well-pleaded allegations in the petition and supporting affidavits are to be taken as true, but not when positively rebutted by the trial record." *Id*. ¶ 48.

¶ 17    Defendant argued that he made a *prima facie* showing of cause for his failure to raise an age-based claim under the proportionate penalties clause of the Illinois constitution in his direct appeal or initial postconviction petition because there were new facts to support his claim. Defendant argued he presented new facts—previously unavailable scientific evidence— "showing that his 18-year-old brain was more like that of a juvenile than an adult, which is both mitigating and constitutionally significant." Defendant also pointed to "new information about his childhood that was not presented at his sentencing hearing." Defendant argued that the *factual basis* for his claim—specifically new scientific evidence—was not available when he filed his initial postconviction petition.

¶ 18    In *People v. Moore*, 2023 IL 126461, the defendants appealed judgments on motions for leave to file successive postconviction petitions that challenged their convictions under the eighth amendment and the proportionate penalties clause. *Moore*, 2023 IL 126461, ¶¶ 15, 25. Moore specifically "alleged that he lacked legal support for the challenges until the United States Supreme Court decided *Miller v. Alabama*, 567 U.S. 460 (2012), and therefore he had cause for filing a successive petition." *Id*. ¶ 15. The second defendant, Williams, also

> "cited *Miller* and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), in support of
> his argument that his sentence violated both the eighth amendment to the United
> States Constitution (U.S. Const., amend. VIII) and the proportionate penalties
> clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11)." *Moore*, 2023 IL
> 126461, ¶ 25.

¶ 19    The *Moore* court held that the defendants failed to sufficiently allege facts that made a *prima facie* showing of cause for raising their sentencing challenges in successive postconviction petitions and affirmed the decisions that denied their motions for leave to file. *Id*. ¶ 42. Our supreme court specifically found that "both Moore and Williams claimed the decision in *Miller*, 567 U.S. 460, gave them cause for raising new constitutional challenges to their sentences." *Moore*, 2023 IL 126461, ¶ 36. Our supreme court relied on its earlier decision in *People v. Clark*, 2023 IL 127273, and found that " ' "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause *** to raise a claim under the proportionate penalties clause." ' [Citations.]" *Id*. ¶ 40 (quoting *Clark*, 2023 IL 127273, ¶ 61 (quoting *People v. Dorsey*, 2021 IL 123010, ¶ 74)).

> "The evidence and arguments raised at the sentencing hearings for both Moore and Williams show the parties knew Illinois law recognized the special status of young adults, especially those subject to adverse influences, for purposes of applying the principles of the proportionate penalties clause. '*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders. Instead, defendant had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause when he filed his previous postconviction petitions.' [Citation.] As *Miller* did not change the law applicable to young adults, it does not provide cause for the proportionate penalties challenges advanced in Moore's and Williams's proposed successive postconviction petitions." *Moore*, 2023 IL 126461, ¶ 42 (quoting *Clark*, 2023 IL 127273, ¶ 93).

¶ 20 In *Clark*, our supreme court found that " '*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause' in a successive postconviction petition" because, "long before *Miller*, many cases in this state already recognized that 'courts have discretion to grant leniency to a juvenile even if he or she is prosecuted as an adult.' " *Clark*, 2023 IL 127273, ¶ 92 (quoting *Dorsey*, 2021 IL 123010, ¶ 74, *People v. Leon Miller*, 202 Ill. 2d 328, 342 (2002)).

¶ 21 Defendant argued that because he was relying on a new *factual basis* for his claim, namely, new scientific evidence concerning brain development of young adults, not a new *legal basis*, our supreme court's decision in *Moore* does not control. Defendant argued that neither *Moore* nor *Clark* disturbed "longstanding precedent" that new, previously unavailable evidence satisfies the cause element of the cause-and-prejudice test. In support of this argument, defendant cited *Blalock*, 2022 IL 126682, *People v. Robinson*, 2020 IL 123849, *People v. Prante*, 2021 IL App (5th) 200074, and *People v. Mitchell*, 2012 IL App (1st) 100907.

¶ 22 The State first responded that defendant forfeited this argument because it was the change in the law upon which defendant relied to satisfy cause in his motion before the circuit court, not new facts. The State argued that this court should, therefore, not consider defendant's argument that "cause was satisfied by new brain research." Regardless, the "unavailability of the newer research *** did not impede defendant's ability to bring his claim earlier." The State argued this is so because "distinctions between adult and young adult offenders already were recognized in Illinois law and the social sciences;" therefore, the " 'new brain research' *** represents 'merely some helpful support' for defendant's claim. [*People v.*] *Haines*, 2021 IL App (4th) 190612, ¶ 46."

¶ 23    We find that defendant adequately preserved this claim. *Supra*, ¶ 9. However, for the reasons that follow, we find that *Blalock* actually refutes defendant's argument that in his motion he presented previously unavailable evidence sufficient to establish cause, and defendant's remaining authorities lend no support.

¶ 24    In *Blalock*, "the rule adopted by the appellate court [was] that the factual basis of a claim of a coerced confession is always known to a defendant, that subsequent evidence of police misconduct is irrelevant to establishing cause, and a coerced confession claim can therefore never be raised in a successive postconviction petition." *Blalock*, 2022 IL 126682, ¶ 41. Our supreme court rejected that rule and found *People v. Brandon*, 2021 IL App (1st) 172411, representative of the majority of appellate court decisions on the issue. *Id*.

¶ 25    In *Brandon*, the appellate court reversed the trial court's judgment that the defendant's second successive postconviction petition was barred by *res judicata*. *Id*. ¶ 43 (citing *Brandon*, 2021 IL App (1st) 172411, ¶¶ 36, 109). The defendant in *Brandon* supported the second successive postconviction claim of physical coercion by police with "evidence with respect to the two officers involved with his interrogation, including three affidavits of other alleged victims, a federal civil rights complaint, and pre-2000 printouts of complaint register histories of the two officers." *Id*. ¶ 43 (citing *Brandon*, 2021 IL App (1st) 172411, ¶¶ 33-34). Our supreme court quoted favorably from *Brandon*:

>    " 'It is through no fault of his own that a defendant does not have immediate access to evidence of a broader pattern of similar abuse inflicted on others by the accused officers. *** [E]ven the most diligent investigation of a defendant's own case will not reveal to him *who else* may have been abused by the same officers when they were interrogated in *their own* cases.

*** [T]he more important point is that this information generally has nothing to do with the facts of the defendant's own case. Thus, investigating the defendant's own case, as diligent counsel is required to do, will not uncover this information. [Citations.]

In other words, the evidence a defendant needs to corroborate a claim of police abuse is as "external to the defense" as it could possibly be, and the barriers to obtaining it are entirely "objective"—that is, not of the defense's own making. [Citation.] So the defendant cannot be faulted for lacking this evidence at the start, and if it becomes available to him later, he may use it then in a successive petition. There is cause for his "failure" (so to speak) to find and use this pattern-and-practice evidence earlier.' [Citation.]" *Blalock*, 2022 IL 126682, ¶ 44 (quoting *Brandon*, 2021 IL App (1st) 172411, ¶¶ 57-59).

¶ 26　The *Brandon* court found that the defendant "thus lacked *any* record to raise this claim" sooner. (Emphasis added.) *Id*. ¶ 45 (quoting *Brandon*, 2021 IL App (1st) 172411, ¶ 65). The *Brandon* court found that "the '*complete absence* of this new, relevant evidence in 2001 provides cause for [the] defendant's "failure to bring the claim in his *** initial post-conviction proceedings." ' [Citations.]" (Emphasis added.) *Blalock*, 2022 IL 126682, ¶ 45.

¶ 27　In this case, the State argued that defendant's position "finds no support" in *Blalock* or similar police coercion cases because those cases were driven by "the unavailability of third-party official reports concerning police torture." The State argued that evidence pertaining to young adult intellectual functioning was not outside defendant's control and had been long recognized by the law and social sciences; therefore, defendant could develop a record to support his claim sooner. We agree.

¶ 28 A key feature of the holding in *Brandon* endorsed by *Blalock* was that the evidence cited in support of the successive petition in that case was only accessible from sources inaccessible to the defendant and that no amount of diligence could have uncovered it. Without the newly discovered evidence, the defendant had "no evidence" with which to support his claim. *Id*. In this case, defendant cannot establish that there was "no evidence" available to him to support his claim that his young adult brain made him, in particular, less culpable and more amenable to rehabilitation. We find that under this court's precedents the *addition* of evidence to a previously raisable claim under the proportionate penalties clause does not satisfy this court's "cause" analyses.

¶ 29 Beginning with new legal bases for claims, in *People v. Haines*, the court wrote that:

"A legal rule is novel, and its novelty is cause for omitting to raise the rule earlier, if the defendant did not have at his disposal the essential legal tools with which to construct his claim in time to present the claim in the initial postconviction proceeding. [Citation.] In other words, a rule is novel, and therefore [is] cause for a procedural default, only if the petitioner did not have the legal tools to construct the claim before the rule was issued. [Citation.]

'Construct' is a significant choice of word. If, in the exercise of reasonable diligence, a claim can be built out of existing legal materials, the defendant has to build the claim without waiting for someone else in another case to do so. Defendants cannot wait until a claim falls ready-made into their lap. Some assembly may be required. Ease of argument is not the standard." (Internal quotation marks omitted.) *Haines*, 2021 IL App (4th) 190612, ¶¶ 44-45.

¶ 30    In *Haines*, the court found that "[t]he young-adult brain *research* to which *Miller* and *Harris* gave their imprimatur provides some helpful support for [the] defendant's claim under the proportionate-penalties clause. It already was accepted in Illinois law, however, that there was a significant developmental difference not only between minors and adults but also between young adults and older adults." (Emphasis added.) *Haines*, 2021 IL App (4th) 190612, ¶ 51.

¶ 31    In *People v. French*, 2022 IL App (1st) 220122, this court rejected the defendant's argument that "he was not impeded solely by the lack of supporting caselaw but also by the lack of evidentiary support." *French*, 2022 IL App (1st) 220122, ¶ 33. Based, in part, on this court's analysis in *Haines*, and our supreme court's decision in *Guerrero*[2], this court expressly found that "if the caselaw underpinning defendant's claim does not provide cause, then defendant's delayed investigation of the claim based on the lack of the caselaw cannot provide cause either." *French*, 2022 IL App (1st) 220122, ¶ 33. The court found that "[t]his is not a situation, like the cases cited by [the] defendant, where cause was established because newly discovered evidence surfaced that the defendants had no control over." *Id*. ¶ 33.

¶ 32    Applying these principles here, we conclude that the "new factual basis" for defendant's claim resulting from deeper research available through technological advancements, greater focus and analysis, and consensus in the psychological community, certainly adds "some helpful support alongside a 'law of nature' that the supreme court acknowledged more than a century ago. [But] [t]he emergence of some helpful support for a claim that already was raisable is not

---

[2]    "As our supreme court has held, 'the lack of precedent for a position differs from "cause" for failing to raise an issue, and a defendant must raise the issue, even when the law is against him, in order to preserve it for review.' " *People v. French*, 2022 IL App (1st) 220122, ¶ 31 (quoting *People v. Guerrero*, 2012 IL 112020, ¶ 20).

cause." *Haines*, 2021 IL App (4th) 190612, ¶ 51 (citing *Dorsey*, 2021 IL 123010, ¶ 74). In responding to the argument that the defendant was impeded by the lack of evidentiary support for their age-based proportionate penalties clause claim, the *French* court found that, "[b]ased on our supreme court's decision in *Dorsey*, [the] defendant's proportionate penalties claim was buildable even prior to the *Miller* decision in 2012." *French*, 2022 IL App (1st) 220122, ¶ 33. Thus, *French* is not limited to situations in which recent research concerning emerging adults existed when the defendant filed his initial postconviction petition, which in *French* occurred in 2019. *Id*. ¶ 1.

¶ 33    Nor is defendant's failure to raise his proportionate penalties clause claim in his initial petition in 2015, following his conviction in 2012, like the situation in *Blalock*, where the defendant could not obtain evidence to support his claim because the evidence was "outside" the defense in that it had nothing to do with the defendant's case, and was, effectively, unobtainable where the keepers of the evidence were motivated to conceal it. Here, there was "some evidence" available to defendant—including his own background—to support defendant's claim. *People v. Searles*, 2024 IL App (1st) 210043-U, ¶ 18 ("on direct appeal [the defendant argued that] his sentence was excessive and 'that the trial court failed to take into account his age, lack of extensive criminal background, and that he had completed his G.E.D. in jail,' ***. Thus, any argument that [he] could not have raised a proportionate penalties argument based on his age earlier is plainly wrong."). See *Dorsey*, 2021 IL 123010, ¶ 74 ("Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing"); see also *Searles*, 2024 IL App (1st) 210043-U, ¶ 14 (noting "research into young adult and adolescent brain development" from 1999 through 2004). "As is the case with juvenile offenders, Illinois courts were also aware that 'less than mature age can extend into young

adulthood—and they have insisted that sentences take into account that reality of human development.' *Haines*, 2021 IL App (4th) 190612, ¶ 47 (citing *Maldonado*, *Center*, and *Adams*[3]). *** [Citation]; see also [*People v.*] *Henderson*, 83 Ill. App. 3d [854,] 869-70 [(1980)] (proportionate penalties clause principles discussed by the appellate court in analyzing [the] defendant's argument that 'restoration becomes more important' when a youthful offender is involved and 'the mitigating factor of defendant's [intellectual disability] was present')." *Clark*, 2023 IL 127273, ¶ 93.

¶ 34    In *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992), the court wrote:

> "The balancing of the retributive and rehabilitative purposes of punishment requires careful consideration of the nature and circumstances of the crime, the defendant's conduct in the commission of the crime, *and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education*." (Emphasis added.) *Maldonado*, 240 Ill. App. 3d at 485-86 (citing *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990)).

¶ 35    Therefore, we also reject defendant's argument that his case is like *Blalock* because he "only would have been able to provide his age at the time of the offense," thus, his claim "would have been summarily dismissed as it would have lacked an arguable basis in fact."

---

[3]    The *Haines* court acknowledged that, although the court in *Adams* relied on the defendant's age to exercise its authority to reduce the minimum portion of the 75-to-100 years' sentence to 40 to 100 years' (*People v. Adams*, 8 Ill. App. 8, 9, 14 (1972)), *Adams* (unlike *Maldonado* and *Center*) did not *explicitly* reference the proportionate penalties clause. *Haines*, 2021 IL App (4th) 190612, ¶ 47.

¶ 36    The question in this case is whether the absence of better evidence to support defendant's claim is cause for not raising it. This court has found that it is not. See *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 63 (the "[d]efendant cannot establish cause for his failure to raise his proportionate penalties claim in his initial postconviction petition because a proportionate penalties clause claim was always available to him in some form."). The basis of an age-based proportionate penalties clause challenge is not "entirely" this "new scientific research" as defendant argues. This court has found that "[t]he factual basis for such a challenge is that fully developed adults are different from young adults who are still developing." *Searles*, 2024 IL App (1st) 210043-U, ¶ 17.

¶ 37    The "new scientific research" reaching a consensus that young adult brains are not fully developed and the ramifications of that fact generally merely helps a young adult to prove that they, particularly, may be less culpable and more amenable to rehabilitation and a return to useful citizenship because of their age. See *People v. Harris*, 2018 IL 121932, ¶ 46 (requiring "evidence about how the evolving science on juvenile maturity and brain development *** applies to [the] defendant's specific facts and circumstances."). Therefore, we also reject the argument that defendant's case is similar to *Blalock* because neither defendant nor his counsel were required to discover "emerging adult brain development research *** as this research did not yet exist." As we have found, the current research does provide some helpful support for defendant's claim, but the absence of that support does not mean that any external support was "unobtainable" or that the claim would have lacked any arguable basis in fact.

¶ 38    We find that *Blalock* demonstrates the failure of defendant's argument that he made a *prima facie* showing of cause. Defendant's remaining authorities are also unpersuasive.

¶ 39    First, *Prante* is distinguishable. In *Prante*, the defendant's claim in a successive postconviction petition was barred by *res judicata*, and the issue was whether the defendant presented substantial new evidence such that the interests of fundamental fairness required the *res judicata* bar to be relaxed. *Prante*, 2021 IL App (5th) 200074, ¶¶ 78-79. The defendant's "successive postconviction petition and supporting affidavits and documents demonstrate[d] that the examination as to the validity of bite mark evidence ha[d] occurred only in the past decade or so." *Id*. ¶ 79. The *Prante* court concluded that, "even if the [defendant] had previously successfully convinced a court to abrogate [prior controlling authority] and hold that *Frye* was applicable to bite mark evidence, the scientific community ha[d] only recently come to question the scientific foundation of this evidence." *Id*. Therefore, in that case, the defendant did establish cause for failing to raise his claim in an earlier proceeding. *Id*. ¶ 79.

¶ 40    *Prante* did not hold that "cause" is satisfied when a successive postconviction petition is based on additional facts derived from new developments in the scientific community. *Prante* involved a claim that evidence was erroneously admitted at trial and that subsequent developments in the law *and* in the scientific community rendered the type of evidence categorically inadmissible. *Prante*, 2021 IL App (5th) 200074, ¶ 87. In *Prante*, like *Brandon* and *Blalock*, the material necessary to build the claim at all—both the application of the *Frye* test to bite mark evidence and the doubt cast on the validity of the science—were "unobtainable" by the defendant; whereas in defendant's case, the materials to build the claim had only improved.

¶ 41    Nor does our supreme court's decision in *Robinson*, 2020 IL 123849, help defendant's argument that his evidence was sufficient to satisfy the cause element of the cause-and-prejudice test because it was previously unavailable. Although the *Robinson* court did discuss newly discovered affidavit evidence, the question in that case was "whether the allegations in the

affidavits [were] sufficient as a matter of law to establish a colorable claim of actual innocence." *Robinson*, 2020 IL 123849, ¶¶ 54, 61 (the appellate court "assumed the validity of the circuit court's finding that [the affidavits] satisfied the newly discovered *** element[] of an actual innocence claim and the State [did] not challenge that determination"). *Mitchell* is also unhelpful in resolving defendant's issue. In *Mitchell*, the court only held, without analysis or elaboration, that the defendant "showed cause for failing to present the affidavit [supporting the defendant's claim that the State used perjured testimony] with his first postconviction petition, as [the affiant] at that time had not admitted that he lied under oath." *Mitchell*, 2012 IL App (1st) 100907, ¶ 65.

¶ 42    Finally, we find persuasive this court's recent decision in *People v. Minniefield*, 2025 IL App (1st) 240463-U, where the defendant similarly sought to challenge his sentence under the proportionate penalties clause and argued that "he satisfied the cause and prejudice test *** because he presented new, previously unavailable, *factual* evidence that, at the time he committed the offense when he was 19 years old, his brain was immature and still developing." (Emphasis added.) *Minniefield*, 2025 IL App (1st) 240463-U, ¶ 3. After the trial court denied the defendant's motion for leave to file a successive petition, this court found that the defendant established cause for failing to raise his claim in an earlier proceeding because he filed his initial postconviction petition before *Miller* was issued. *Id.* ¶ 23. Following a remand from this court the defendant, now represented by appointed counsel, filed a supplemental petition that argued, in part, that "the research regarding the brain development of young offenders did not exist at the time of his sentencing." *Minniefield*, 2025 IL App (1st) 240463-U, ¶¶ 24-28. The State filed a motion to dismiss the petition based, in part, on *Moore* and *Clark*, both of which were issued after the defendant filed his supplemental petition. *Id.* ¶ 35. See *People v. Chavez*, 2025 IL App (1st) 231823-U, ¶ 8 ("Although the cause-and-prejudice analysis is usually conducted by the

court alone in determining whether the defendant should be granted leave to file a successive petition, the State may relitigate either cause or prejudice in a motion to dismiss after leave to file has been granted.").

¶ 43    The trial court granted the State's motion to dismiss. *Id*. ¶ 39. On appeal, the defendant argued that "he established cause for his claim that his 50-year sentence for an offense he committed when he was 19 years old violate[d] the proportionate penalties clause because the scientific research regarding the brain development of young adults that formed the basis of his claim was previously unavailable." *Minniefield*, 2025 IL App (1st) 240463-U, ¶ 50. Almost identically to this case, the defendant in *Minniefield* argued that:

> "*Moore* and *Clark* do not foreclose him relief because he does not rely on
> *Miller* as the sole cause for failing to raise his claim earlier but rather relies on
> new evidence and facts supporting his claim that did not exist at the time of his
> previous postconviction proceedings. This new evidence, he argues, includes
> scientific articles from 2015 and 2016, the testimony from Dr. Laurence Steinberg
> from September 2017, and the 2022 research paper published by the Center for
> Law, Brain & Behavior at Massachusetts General Hospital entitled 'White Paper
> on the Science of Late Adolescence: A Guide for Judges, Attorneys and Policy
> Makers' [(White Paper).]" *Minniefield*, 2025 IL App (1st) 240463-U, ¶ 60.

¶ 44    We note that, in this case, defendant's argument that the evidence and scientific consensus that his brain was maturing and more like a juvenile did not exist at the time of defendant's sentencing and initial postconviction proceedings relied primarily on the White Paper. As defendant did here, the defendant in *Minniefield* argued that "a significant amount of scientific development, which would directly impact his culpability and potential for

rehabilitation, occurred after Minniefield filed his initial postconviction petition." *Id.* Also as in this case, "Minniefield attached an affidavit that highlighted facts from his childhood." *Minniefield*, 2025 IL App (1st) 240463-U, ¶ 29.

¶ 45 This court pointed out that it had "previously rejected the argument that recent neuroscientific research in the brains of young adult offenders provided the necessary cause for raising a proportionate penalties clause challenge in a successive postconviction petition." *Minniefield*, 2025 IL App (1st) 240463-U, ¶ 61 (and cases cited therein). The *Minniefield* court followed "the reasoning in these cases and similarly conclude[d] that the recent neuroscientific research [did] not provide Minniefield cause for failing to raise his challenge in his initial postconviction petition." *Minniefield*, 2025 IL App (1st) 240463-U, ¶ 61.

¶ 46 We agree with *Minniefield*. Specifically, as stated above, we agree that "[a]lthough the most recent scientific research and developments may provide 'some helpful support' for [this] claim, [the defendant] was not precluded from raising his claim earlier, and the unavailability of such research does not provide cause." *Minniefield*, 2025 IL App (1st) 240463-U, ¶ 63 (citing, *inter alia*, *Searles*, 2024 IL App (1st) 210043-U, ¶¶ 14-15). This is so because, "[w]hile more recent studies may provide *better* evidence for [this] argument, those studies do not provide new or undiscovered evidence that *** could not have presented earlier." *Searles*, 2024 IL App (1st) 210043-U, ¶ 14. We also note that the *Searles* court similarly distinguished *Blalock* on the grounds that, "[f]or newly discovered evidence to constitute cause, the lack of that evidence must have effectively barred the defendant from raising his claim at an earlier proceeding," but "[t]hese concerns are absent in a sentencing challenge based on the defendant's age." *Id.* ¶¶ 15-17; see *supra*, ¶ 28.

¶ 47    Defendant failed to establish cause for his failure to raise his proportionate penalties clause claim in his initial postconviction petition. "Because we find that the petitioner has failed to establish cause, we need not determine whether he made the requisite showing of prejudice." *People v. Ascencio*, 2026 IL App (1st) 241534-U, ¶ 38 (citing *People v. Guerrero*, 2012 IL 112020, ¶¶ 15, 22).

¶ 48                              CONCLUSION

¶ 49    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 50    Affirmed.